478 F.2d 1345
 Fred BAUGHMAN as parent and on behalf of Lynne Baughman and
Beth Baughman, minors et al., Appellants,
v.
William FREIENMUTH, President, Montgomery County Board of
Education et al., Appellees.
 No. 72-1892.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 6, 1973.
Decided May 17, 1973.
 
 Edward L. Genn, Washington, D. C. (Arnold Hammer, on brief), for appellants.
 Robert S. Bourbon, Rockville, Md., for appellees.
 Before WINTER and CRAVEN, Circuit Judges, and ALBERT V. BRYAN, Jr., District Judge.
 CRAVEN, Circuit Judge:
 
 
 1
 This is another freedom of speech case in the high school context. We are asked to extend our decision in Quarterman v. Byrd, 453 F.2d 54 (4th Cir. 1971) to prohibit any prior restraint based on content from being exercised by school officials over written material to be distributed on school grounds. We decline to do so. However, the application of Quarterman to this case requires that the decision of the district court be vacated insofar as it fails to grant the plaintiffs the complete relief to which they are entitled.
 
 I.
 
 2
 The plaintiffs, parents on behalf of their children in the Montgomery County school system, brought this action seeking injunctive and declaratory relief against the Montgomery County Board of Education, its members and officers, and against the Maryland State Board of Education. The complaint attacked certain regulations (contained in a policy statement re-issued September 20, 1971) as an unlawful prior restraint on the distribution of non-school sponsored literature in violation of the first amendment.
 
 
 3
 Distribution of a pamphlet criticizing the prior restraint regulations resulted in a warning letter from the principal and subsequently the commencement of this litigation. As in Quarterman, we need not assess the content of the pamphlet; we are concerned only with the consitutional validity of the September 20, 1971, regulations and the scope of further relief to which plaintiffs are entitled.
 
 
 4
 The challenged regulations of the board provide in relevant part:
 
 
 5
 Under the following procedures, student publications produced without school sponsorship may be distributed in schools:
 
 
 
 * * *
 4) A copy must be given to the principal for his review. (He may require that the copy be given him up to three school days prior to its general distribution.) If, in the opinion of the principal, the publication contains libelous or obscene language, advocates illegal actions, or is grossly insulting to any group or individual, the principal shall notify the sponsors of the publication that its distribution must stop forthwith or may not be initiated, and state his reasons therefor. The principal may wish to establish a publications review board composed of staff, students, and parents to advise him in such matters.
 Students may distribute or display on designated bulletin boards materials from sources outside the school subject to the same procedures that govern student publications. . . .
 The district court 343 F.Supp. 487, held: (1) that the regulation was invalid in restraining material which "advocates illegal actions, or is grossly insulting," and in failing to require the principal to act promptly; (2) that provisions for a review of the principal's action were gratuitous and unnecessary; and (3) that the prior restraint of libelous and obscene material was valid even though those terms are not otherwise defined. We affirm in part and reverse in part.
 II.
 The regulation complained of reaches the activity of pamphleteering which has often been recognized by the Supreme Court as a form of communication protected by the first amendment. Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). It does not deal with such expression in neutral terms of time, place, and manner of distribution.[1] Rather it is a rule imposing prior restraint on expression because of "its message, its ideas, its subject matter, or its content"-a power of restraint denied government by the first amendment in public areas including state college campuses.[2] Police Dep't of the City of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).
 In the secondary school setting first amendment rights are not coextensive with those of adults and while such rules of prior restraint may be valid, they nevertheless come to this court with a presumption against their constitutionality. Tinker v. Des Moines Community School Dist., 393 U.S. 503, 513, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); see University of So. Miss. Chapter of the Miss. Civil Liberties Union v. University of So. Miss., 452 F.2d 564, 566 (5th Cir. 1971). To overcome this presumption, school regulations must come within the constitutional limits defined in Quarterman.
 It is generally held that the constitutional right to free speech of public secondary school students may be modified or curtailed by school regulations "reasonably designed to adjust these rights to the needs of the school environment." . . . Specifically, school authorities may be appropriate regulation, exercise prior restraint upon publications distributed on school premises during school hours in those special circumstances where they can "reasonably 'forecast substantial disruption of or material interference with school activities' " on account of the distribution of such printed material . . . .
 What is lacking in the present regulation, and what renders its attempt at prior restraint invalid, is the absence both of any criteria to be followed by the school authorities in determining whether to grant or deny permission, and of any procedural safeguards in the form of "an expeditious review procedure" of the decision of the school authorities.
 453 F.2d at 58-59.
 The present regulation, like the one in Quarterman, is impermissible. It lacks the procedural safeguard of a specified and reasonably short period of time in which the principal must act. Moreover, the regulation fails to provide for the contingency of the principal's failure to act within a specified brief time, i. e., whether upon such failure the material then could be distributed. See Freedman v. Maryland, 380 U.S. 51, 59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). It is not our province to suggest a time limit, but we caution that whatever period is allowed, the regulation may not lawfully be used to choke off spontaneous expression in reaction to events of great public importance and impact. See Wright, at 1044. Furthermore, as pointed out in Quarterman, " 'an expeditious review procedure' of the decision of the school authorities" is required. 453 F.2d at 59. The present regulation lacks these procedural safeguards and is, therefore, an unreasonable restriction on the first amendment rights of school children. See Burnside v. Byars, 363 F.2d 744, 747-748 (5th Cir. 1966).
 Moreover, the proscription against "distribution" is unconstitutionally vague. With respect to some communicative material there may be no prior restraint unless there is "a substantial distribution of written material, so that it can reasonably be anticipated that in a significant number of instances there would be a likelihood that the distribution would disrupt school operations." Eisner v. Stamford Bd. of Education, 440 F.2d at 803, 811. With respect to other types of material, e. g., pornography, one copy, indeed, the only copy may be the subject of what is legitimate prior restraint if what is forbidden is precisely defined.[3] The prohibition of material which "advocates illegal actions, or is grossly insulting to any group or individual" seems to belong in the first category and thus goes beyond the permissible standard (for that type of material) of forecasting substantial disruption. See Tinker v. Des Moines Community School Dist., 393 U.S. 503, 514, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).
 III.
 While the district court found the regulation invalid, the court nevertheless found "that the Montgomery County Rule, insofar as it allows the imposition of a prior restraint upon obscene or libelous material, is valid." We agree that material which is, in the constitutional sense, unprivileged libel or obscenity if read by children[4] can be banned from school property by school authorities. See Eisner v. Stamford Bd. of Educ., 440 F.2d 803, 809 n. 6 (2d Cir. 1971). If there were no contemplated prior restraint but instead merely postpublication sanction, the problem of vagueness would not be intolerable. Put affirmatively, we think that a regulation imposing prior restraint must be much more precise than a regulation imposing post-publication sanctions. As Mr. Justice Marshall said in Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968): "The vice of vagueness is particularly pronounced where expression is sought to be subjected to licensing." 390 U.S. at 683, 88 S.Ct. at 1303. He quoted Chief Judge Fuld with approval: "It is . . . essential that legislation aimed at protecting children from allegedly harmful expression-no less than legislation enacted with respect to adults-be clearly drawn and that the standards adopted be reasonably precise so that those who are governed by the law and those that administer it will understand its meaning and application." 390 U.S. at 689, 88 S. Ct. at 1306.
 To do otherwise is to leave administrators "adrift upon a boundless sea . . . ." Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 504, 72 S.Ct. 777, 96 L.Ed. 1098 (1952).
 In Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), the Court spoke critically of a system of prior restraint comparing it unfavorably with post-publication criminal sanctions:
 In thus obviating the need to employ criminal sanctions, the State has at the same time eliminated the safeguards of the criminal process. Criminal sanctions may be applied only after a determination of obscenity has been made in a criminal trial hedged about with the procedural safeguards of the criminal process. The Commission's practice is in striking contrast, in that it provides no safeguards whatever against the suppression of nonobscene, and therefore constitutionally protected, matter. It is a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law.
 What Rhode Island has done, in fact, has been to subject the distribution of publications to a system of prior administrative restraints, since the Commission is not a judicial body and its decisions to list particular publications as objectionable do not follow judicial determinations that such publications may lawfully be banned. Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity. See Near v. Minnesota, 283 U.S. 697 [, 51 S.Ct. 625, 75 L.Ed. 1357] (1931); Lovell v. Griffin, 303 U.S. 444, 451 [, 58 S.Ct. 666, 668, 82 L.Ed. 949] (1938); Schneider v. State, 308 U.S. 147, 164 [, 60 S.Ct. 146, 152, 84 L.Ed. 155] (1939); Cantwell v. Connecticut, 310 U.S. 296, 306 [, 60 S.Ct. 900, 904, 84 L.Ed. 1213] (1940); Niemotko v. Maryland, 340 U.S. 268, 273 [, 71 S.Ct. 325, 328, 95 L.Ed. 267] (1951); Kunz v. New York, 340 U.S. 290, 293 [, 71 S.Ct. 312, 314, 95 L.Ed. 280] (1951); Staub v. Baxley, 355 U.S. 313, 321 [, 78 S.Ct. 277, 281, 2 L.Ed.2d 302] (1958). We have tolerated such a system only where it operated under judicial superintendance and assured an almost immediate judicial determination of the validity of the restraint. Kingsley Books, Inc. v. Brown, 354 U. S. 436 [, 77 S.Ct. 1325, 1 L.Ed.2d 1469] (1957).
 372 U.S. at 69-71, 83 S.Ct. at 639.
 In short, we think letting students write first and be judged later is far less inhibiting than vice versa. For that reason vagueness that is intolerable in a prior restraint context may be permissible as part of a post-publication sanction. As stated by Justice Harlan:
 One danger of a censorship system is that the public may never be aware of what an administrative agent refuses to permit to be published or distributed. A penal sanction assures both that some overt thing has been done by the accused and that the penalty is imposed for an activity that is not concealed from the public.
 A Quantity of Books v. Kansas, 378 U.S. 205, 223, 84 S.Ct. 1723, 1732, 12 L.Ed.2d 809 (1964) (dissenting opinion).
 Thus a regulation requiring prior submission of material for approval before distribution must contain narrow, objective, and reasonable standards by which the material will be judged. See Quarterman, 453 F.2d at 59. Such a standard is required in order that those charged with enforcing the regulation are not given impermissible power to judge the material on an ad hoc and subjective basis and that forbidden activity be clearly delineated so as not to inhibit basic first amendment freedoms. See Grayned v. City of Rockford, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).
 The use of terms of art such as "libelous" and "obscene" are not sufficiently precise and understandable by high school students and administrators untutored in the law to be acceptable criteria. Indeed, such terms are troublesome to lawyers and judges. None other than a Justice of the Supreme Court has confessed that obscenity "may be indefinable."[5] Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964) (Stewart, J., concurring). "Libelous" is another legal term of art which is quite difficult to apply to a given set of words. Moreover, that words are libelous is not the end of the inquiry: libel is often privileged. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
 Thus, while school authorities may ban obscenity and unprivileged libelous material there is an intolerable danger, in the context of prior restraint, that under the guise of such vague labels they may unconstitutionally choke off criticism, either of themselves, or of school policies, which they find disrespectful, tasteless, or offensive. That they may not do.[6]
 By way of summary, we hold that the Montgomery County prior restraint regulation is unconstitutional and that its enforcement must be enjoined. Our decision rests upon these propositions of law:
 (a) Secondary school children are within the protection of the first amendment, although their rights are not coextensive with those of adults.
 (b) Secondary school authorities may exercise reasonable prior restraint upon the exercise of students' first amendment rights.
 (c) Such prior restraints must contain precise criteria sufficiently spelling out what is forbidden so that a reasonably intelligent student will know what he may write and what he may not write.
 (d) A prior restraint system, even though precisely defining what may not be written, is nevertheless invalid unless it provides for:
 (1) A definition of "Distribution" and its application to different kinds of material;
 (2) Prompt approval or disapproval of what is submitted;
 (3) Specification of the effect of failure to act promptly; and,
 (4) An adequate and prompt appeals procedure.
 For the reasons stated, we reverse with regard to the denial of declaratory and injunctive relief and remand for further proceedings.
 Reversed in part.
 Affirmed in part.
 Remanded.
 1 To the extent that a prior submission rule is to control the time, place, and manner of distribution, it is valid. "Just as in the community at large, reasonable regulations with respect to the time, the place, and the manner in which student groups conduct their speech-related activities must be respected." Healy v. James, 408 U.S. 169, 192-193, 92 S.Ct. 2338, 2352, 33 L.Ed.2d 266 (1972); Jones v. Board of Regents, 436 F.2d 618, 620 (9th Cir. 1970). See Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1044 (1969).
 2 Healy v. James, 408 U.S. 169, 180, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); Papish v. University of Mo. Bd. of Curators, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973).
 3 The illustrations in Sec. 1851 of the proposed revisions of the federal criminal code seem to be a careful attempt to describe what is meant by Mr. Justice Stewart's phrase "hard core pornography". Selections from President's Version of Revised Federal Criminal Code Sec. 1851, 13 Crim.L.W. 3005, 3016 (April 11, 1973).
 4 See Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).
 5 It is instructive that the President's current proposed revision of the federal criminal code undertakes detailed explicit illustrations of "obscene material". Section 1851, supra, note 4.
 6 Scoville v. Board of Educ., 425 F.2d 10, 14 (7th Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). See also Pickering v. Board of Educ., 391 U.S. 563, 573-574, 88 S.Ct. 1731, 20 L. Ed.2d 811 (1968); Eisner, 440 F.2d at 809.