Joshua LEIBNER, a minor by his next friend Stanley Leibner, Plaintiff,

v.

William SHARBAUGH et al., Defendants.

Civ. A. No. 77–0111–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Feb. 25, 1977.

---

Richard E. Crouch, Arlington, Va., Jonathan Shapiro, Alexandria, Va., for plaintiff.

Henry St. J. Fitzgerald, Arlington, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a minor who sues by his next friend, is a student at Washington Lee High School, Arlington, Virginia who brings this action under 42 U.S.C. § 1983 to challenge the constitutionality of certain school regulations pertaining to the distribution of literature in the high school. Plaintiff seeks declaratory, monetary and injunctive relief. The defendants include the principal of Washington Lee High School, the Superintendent of Schools for Arlington County, Virginia, and the individual members of the School Board of that County. The matter comes before the Court on the plaintiff's motion for a temporary restraining order. Counsel have argued their respective positions and the matter is ripe for determination.

The sworn complaint and affidavits submitted by the parties reflect the following: The plaintiff is a junior at Washington Lee High School, a public school in Arlington County, Virginia. On October 17, 1976, the plaintiff published and sold (during free periods outside the classroom) the first issue of an "underground" newspaper titled the *Green Orange.* Pursuant to school policy, plaintiff submitted the newspaper to the school principal for his approval. The principal, Dr. Sharbaugh, orally forbade further distribution of the publication and ordered the confiscation of all distributed issues. The second issue of the paper was circulated in early November of 1976. Dr. Sharbaugh told the plaintiff to discontinue distribution of the newspaper upon threat of

suspension. On Friday, November 5, the plaintiff sold an issue of the paper at a school football game. The following Monday the plaintiff was suspended. In the notification letter sent to the parents of the plaintiff, Dr. Sharbaugh gave the following reasons for the suspension: (1) the newspaper was distributed without receiving prior approval as required by the Student Responsibility and Rights Policy of Arlington County; (2) the publication did not identify the author as required by the school rules; and (3) the newspaper was of questionable taste, decency, and journalistic standards. On protesting the lack of a hearing prior to being suspended, the plaintiff was advised that the two oral warnings given by Dr. Sharbaugh constituted whatever "hearing" due process might mandate. On the condition that the plaintiff agree to refrain from distributing the paper, he was readmitted to school on November 15, 1976.

Counsel for the plaintiff has described the *Green Orange* as "a showcase of bad taste." Affidavits submitted by the defendant Sharbaugh and two students at Washington Lee High School attest that in their opinions, the content of the paper might offend certain segments of the student population—particularly racial minorities—and lead to acts of physical confrontation.

The plaintiff presently petitions the Court to enjoin the defendants from prohib-iting the distribution of the *Green Orange* by threats of disciplinary measures. At the heart of this controversy are the substantive rules and procedures pertaining to distribution of student publications on campus. A student desiring to distribute written material must submit a copy of the text to the school principal at least one school day prior to the day of intended distribution. The material itself "should conform to journalistic standards of accuracy, taste, and decency maintained by the newspapers of general circulation in Arlington; it shall not contain obscenity, incitements to crime, material in violation of law or lawful regulation, or libelous material." [1] Should a principal refuse to permit the distribution of the submitted material, the student may appeal to the Director of School and Community Activities. The Director must reply to the appeal within one week. An adverse decision by the Director may be appealed to the Superintendent of Schools who must act within one week of receiving any such appeal. A complainant may ultimately have the decision reviewed by the School Board at its then next regular meeting. The student may submit additional materials for the consideration of the School Board but no speakers will be heard on the matter unless the Board so directs.[2]

In considering whether to grant a temporary restraining order, the Court

---

1. Section IIIC. Student Responsibilities and Rights, Arlington Public Schools, Arlington, Virginia provides:

> C. In secondary schools the right of student groups to freedom of press, such as by posters, pamphleting, distributing newspapers or newsletters such not be abridged, censored, or subject to prior restraint, except as provided herein. Regulations may provide for the time, location and manner of distributing such materials. These publications should conform to journalistic standards of accuracy, taste, and decency maintained by the newspapers of general circulation in Arlington; they shall not contain obscenity, incitements to crime, material in violation of law or lawful regulation, or libelous material. Any student or student group intending to distribute written material shall submit a copy of the text of such material to the school principal as soon as the text of such

material is available, but in no case less than one school day prior to the day of intended distribution, without permission of the principal. Except when blatant obscenity, incitement to crime, etc., clearly justifies prior restraint, violations may be the subject of only subsequent disciplinary action. Any such material produced by a student shall bear the name of at least one student, who shall be responsible for its contents. But others directly and knowingly contributing to violation of limitations set forth above shall likewise be held answerable.

2. The grievance procedure is set forth in Section IVA of the Student Responsibilities and Rights, Arlington Public Schools, Arlington, Virginia as follows:

> Any member of the school community (students, faculty, administrators and parents who may also speak and act on behalf of their children) who has been aggrieved by

must take into account the threat of immediate irreparable harm to the plaintiff should injunctive relief be denied; the injury to other parties should the injunction issue; the probabilities that the plaintiff will succeed on the merits; any interest of the public. *Cf. Conservation Council of North Carolina v. Costanzo,* 505 F.2d 498, 507 (4th Cir. 1974); *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970).

▆▆▆ The pleadings and affidavits submitted to date indicate to the Court's satisfaction that the plaintiff is likely to prevail on the merits of this controversy. The United States Court of Appeals for the Fourth Circuit has addressed the issue of free press in a high school setting on several occasions. In general, school regulations which act as a prior restraint on the distribution of student literature are constitutionally permissible *only* where the substantive justifications for such restraint are precisely defined and the procedures for making these determinations and the review of any decision to restrain distribution are adequate. *Nitzberg v. Parks,* 525 F.2d 378 (4th Cir. 1975); *Baughman v. Freienmuth,* 478 F.2d 1345 (4th Cir. 1973); *Quarterman v. Byrd,* 453 F.2d 54 (4th Cir. 1971). In this case, both the substantive standards and procedural safeguards are facially inadequate. Student publications must conform to the "journalistic standards of accuracy, taste, and decency maintained by the newspapers of general circulation in Arlington . . . ." This 'standard' represents a monument to vagueness. There are no guidelines or criteria by which such levels of accuracy, taste and decency may be ascertained by either the author of literature or the reviewing principal. Indeed, this is the type of vagueness which led to the invalidation of the regulations litigated in *Quarterman v. Byrd, supra,* and *Baughman v. Freienmuth, supra.* Proscriptions against distributing obscene or libelous material do not define those terms. This, too, renders the regulation unconstitutionally vague. *See Baughman v. Freienmuth, supra,* 478 F.2d at 1348. Similarly defective are the bans against the distribution of material "in violation of law or lawful regulation" or for "incitements to crime." As noted in *Nitzberg v. Parks, supra,* 525 F.2d at 383, the directives must (1) provide sufficient guidance to students as to what may be distributed with impunity; and (2) detail the criteria by which an administrator may reasonably determine whether these directives have been violated. As noted by Circuit Judge Craven, "a regulation imposing prior restraint must be *much more pre-*

---

any action or failure to take action on the part of school personnel which is or was violative of the provisions set forth in this statement may, within ten days of the events giving rise to the complaint, complain in writing to the director of school and community activities.

Such complaint should set forth briefly but specifically the fac' ˢ complained of and point out the language in this statement that is alleged to be controlling. The director receiving such a complaint shall reply in writing within one week, giving his decision on the complaint, which shall contain a summary of the facts on which the decision is based. If facts other than those set forth in the complaint are relied upon by the director, the decision shall set forth the source and reasons for reliability of those additional facts.

If the complainant remains unsatisfied, he may, within 5 days of receipt of the decision, appeal to the Superintendent of Schools by giving the director of school and community activities a written notice he wishes to appeal to the Superintendent.

The director of school and community activities will forthwith forward all papers on the matter to the Superintendent of Schools. The complainant may send to the Superintendent any additional written materials he thinks applicable.

The Superintendent will reply in writing within one week, and the same way as is required by the director of school and community activities.

If the complainant desires to appeal the decision of the Superintendent to the School Board, he may do so within five days of the Superintendent's decision by giving the Superintendent written notice of his desire to appeal. The Superintendent shall forward copies of all papers on the matter to the School Board as one of the administrative items to be considered by the School Board at its next regular meeting. The complainant may submit such additional materials to the School Board as he desires, but no speakers will be heard on the matter unless the Board so directs.

*cise* than a regulation imposing post-publication sanctions." *Baughman v. Freienmuth, supra,* 478 F.2d at 1349 (emphasis added). That the regulation in issue fails to meet this standard is pointedly illustrated by that portion of same which authorizes prior restraint in instances of "blatant obscenity, incitement to crime, *etc.*" (emphasis added).

Procedures contemplated under the regulations are also constitutionally defective. Several weeks may pass between the time a student submits literature for approval and the time final action is taken, if necessary, by the School Board. There is no time limit specified within which a principal must render a decision as to whether a submitted piece of literature may be distributed. An appeal of a principal's decision adverse to the student may take as must as two weeks before being considered at the then next regular meeting of the School Board. A virtually identical procedure was struck down in *Nitzberg v. Parks, supra,* 525 F.2d at 383–385. It must also be noted that at no point in the administrative process is a student guaranteed an opportunity to orally present his or her side of the issue. Such a procedure is constitutionally suspect where, as here, the distribution of material without prior approval can result in the suspension of the student. *See Nitzberg v. Parks, supra,* 525 F.2d at 384. *Cf. Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

In short, the regulation in controversy is infected with blatant constitutional defects of both a substantive and procedural nature. The affidavits submitted by the defendants pertain to the potential disruptive impact of the distribution of the *Green Orange* would have had on Washington Lee High School in the fall of 1976. These affidavits are necessarily speculative as the potential disruption was diffused by the suppression of the newspaper. The Court must, in deciding whether to grant injunc-

tive relief, look to the future rather than the past. Accordingly, the threat of disruption as of October-November of 1976 is of little relevance to the issue at hand. The possibility of disrupting school activities is, of course, a significant consideration. Before activity protected by the First Amendment[3] can be repressed on this basis, however, both the criteria for determining the likelihood of disruption and the process for rendering such a determination must be adequate. *Quarterman v. Byrd, supra.* A blanket conclusion does not pass the constitutional muster.

Having concluded that the regulations in question are facially constitutionally defective, the Court must now consider whether irreparable harm will result from the failure to issue a restraining order. The plaintiff could not represent to the Court that he would attempt to publish his paper within the then next ten days. While this mitigates his claim of immediacy, the inquiry does not stop here. As succinctly stated by Mr. Justice Clark, "that to punish, *ipsa dixit* a student who publishes literature which may have suffered improper prior restraint, places the student on his own peril and *the resulting chill on First Amendment activity would be intolerable.*" *Nitzberg v. Parks, supra,* 525 F.2d at 384 n.5 (emphasis supplied). This Court concludes that the chilling effect of the regulations in issue constitute immediate and irreparable harm.

The issuing of a restraining order, although an interference with school policy, will not unduly burden school officials. *See Nitzberg v. Parks, supra,* 525 F.2d at 384. Any burdens which do arise are necessary because "we cannot permit those conditions to suppress the First Amendment rights of individual students." *Nitzberg v. Parks, supra,* 525 F.2d at 384. The Court's observation in this regard indicates that the public interest, indeed, is

3. The fact that the prior restraint goes to distribution rather than publication is of no consequence. *Quarterman v. Byrd,* 453 F.2d 54, 57 n.4 (4th Cir. 1971). Similarly, it is of no consequence that the publication was being sold rather than freely distributed. *Nitzberg v. Parks,* 525 F.2d 378, 383 n.4 (4th Cir. 1975).

advanced by the protection and not the repression of First Amendment activity.

An appropriate order will issue.