622 F.2d 1200
 Gregory J. WILLIAMS, Individually and by his mother, Andrea
M. Williams, and in his capacity as co-editor of the "Joint
Effort"; and Mark I. Gutstein, Individually and by his
father, Martin Gutstein, and in his capacity as co-editor of
the "Joint Effort", Appellants,
v.
Elizabeth SPENCER; Herbert Benington; Blair Hewing; Verna
Fletcher; Marian Greenblatt; Roscoe Nix; Dr. Daryl Shaw,
Individually and in their official capacity as Members
constituting the Montgomery County Board of Education; and
Dr. Charles M. Bernardo, Individually and in his capacity as
Superintendent of Montgomery County Public Schools; and Dr.
George B. Thomas, Individually and in his capacity as Area
II Assistant Superintendent of Montgomery County Public
Schools; and Dr. Thomas P. Marshall, Individually and in his
capacity as Principal of Springbrook High School; and Austin
Patterson, Individually and in his capacity as
Administrative Assistant and/or Building Monitor,
Springbrook High School, Appellees.
 No. 78-1590.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 9, 1979.
Decided June 12, 1980.
 
 Michael D. Simpson, Student Press Law Center, Washington, D. C. (Michael S. Shelton, Cohen, Abeloff & Staples, Richmond, Va., on brief), for appellants.
 Paul V. McCormick, Rockville, Md., for appellees.
 Before FIELD, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Gregory J. Williams and Mark I. Gutstein, students at the time of filing this action at Springbrook High School within the Montgomery County, Maryland school district, brought suit seeking declaratory and injunctive relief, damages, and attorneys' fees against the Montgomery County Board of Education, the superintendent of schools, an area assistant superintendent, a school principal, and a building monitor. They claimed an alleged interference with their First Amendment rights, and sought an order enjoining the school authorities from restraining on school property the distribution of their non-school sponsored publication, the Joint Effort, Issue 2, and from enforcing the Publication Guidelines of Montgomery County. From a judgment in favor of the defendants, plaintiffs appeal. We affirm.
 
 
 2
 During the 1976-77 school term, the plaintiffs published and distributed the first issue of the Joint Effort, a self-styled underground newspaper designed as an alternative for student expression. This issue was distributed on school grounds with the express permission of the principal.
 
 
 3
 Following the success of that first issue, the plaintiffs published a second issue of the paper the following school year. The second issue contained various literary contributions, cartoons, and advertisements.
 
 
 4
 The plaintiffs printed approximately 350 copies of the Joint Effort, and acquired advance approval of the school officials for the distribution of the paper on February 17, 1978. The plaintiffs were not, however, required to seek prepublication or predistribution approval of the contents of the publication. In fact, the school officials were not even aware of the contents of the publication prior to the commencement of distribution.
 
 
 5
 Ten to twenty minutes after the sale of the paper began, the building monitor, Mr. Austin Patterson, halted the sale of the paper, confiscated the remaining copies, and took them to the school principal, Dr. Thomas P. Marshall. Patterson was the subject of a cartoon on the back cover of the paper that depicted him in cowboy clothing and speaking in dialect.[1] The students had distributed approximately eighty copies of the paper before the distribution was halted.
 
 
 6
 Marshall upheld Patterson's seizure of the paper and banned any further distribution of Issue 2 on school property. The principal did, however, return the confiscated papers to the plaintiffs at the conclusion of the same day on which the papers were confiscated. The ban on distribution applied only to distribution on school property.
 
 
 7
 As required by the Student Rights and Responsibilities Policy (S.R.R.P.) § IVC-2(d);[2] the school principal, within two school days of halting distribution, stated in writing his reasons for the action.[3] In his letter, Marshall stated:
 
 
 8
 1. A copy of the "Joint Effort" was reviewed and the publication was found to be in violation of Section 4C, titled "Publications." The specific violation is under C-2(c)(2). A member of the staff was depicted in derogatory terms with clear indications of racial overtones.
 
 
 9
 2. A second violation occurs in the promotion of drug paraphernalia. This is a violation of Section 2-C(c)(5), which prohibits the distribution of material which encourages actions which endanger the health and safety of students.
 
 
 10
 The first reason referred to the cartoon depicting the building monitor in western clothing. The second reason for halting the distribution of the Joint Effort referred to an advertisement for the Earthworks Headshop, a store that specializes in the sale of drug paraphernalia. The advertisement primarily promoted the sale of a waterpipe used to smoke marijuana and hashish.[4] The ad also advertised paraphernalia used in connection with cocaine.
 
 
 11
 Following the principal's decision to ban any further distribution of that issue of the Joint Effort, the students followed the appeals procedure provided for in S.R.R.P. § XIII Due Process Appeal of the Decision of the Principal. The students first appealed to the area assistant superintendent, Dr. George B. Thomas, and obtained an informal hearing on March 15, 1978. In an undated memorandum, but issued apparently within the five school days called for in S.R.R.P. § XIIIC-3(c), Thomas upheld the decision of the principal.
 
 
 12
 The students then appealed to the superintendent of schools, Dr. Charles M. Bernardo, who rendered his decision in writing on April 14, 1978, also within the time limit provided for in S.R.R.P. § XIII. Bernardo supported the decision of the principal and upheld the ban on further distribution on school property of that issue of the Joint Effort. The superintendent expressly noted that the ban did not apply to any future issue of the publication that did not violate the guidelines.[5]
 
 
 13
 Following their unsuccessful administrative appeals, the students filed this suit against members of the school board, the superintendent, the area assistant superintendent, the principal, and the building monitor. The plaintiffs claimed that the seizure and continued restraint against distribution of the Joint Effort violated their First Amendment rights, and that the school system's regulatory scheme was facially invalid. The students sought damages for the restraint on distribution of the Joint Effort, and declaratory relief and an injunction to prohibit the school officials from further preventing its distribution. Additionally, the plaintiffs sought to enjoin the enforcement of the publication guidelines of Montgomery County.
 
 
 14
 Regarding the alleged First Amendment violation from the prohibition against distribution, the district court considered only whether the presence of the advertisement for the head shop provided the school with the right to halt the distribution of the Joint Effort, and held that the school was justified in halting and prohibiting further distribution of the paper.[6] As to the alleged facial invalidity of the guidelines, the court held that the health and safety regulation was not so vague as to violate First Amendment standards, and that the time involved in the school administrative appeal procedure was not unconstitutional.
 
 
 15
 As to the plaintiffs' charges of facial invalidity regarding certain other regulations,[7] the district court held that the plaintiffs lacked standing to challenge them because the regulations were not directly involved in halting the distribution of the Joint Effort, and thus the plaintiffs suffered no personal injury because of them. We affirm because the plaintiffs have failed to show that they were injured by the operation of the regulation. Ashwander v. T. V. A., 297 U.S. 288, 341, 347, 56 S.Ct. 466, 480, 483, 80 L.Ed. 688 (Mr. Justice Brandeis concurring).
 
 
 16
 The record indicates that the plaintiffs will have now graduated from Springbrook High School. Thus, we treat as moot the claims for injunctive relief for the case presents no question that is capable of repetition, yet evades review. Indianapolis School Commissioners v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). We do not decide the claims for declaratory relief because the merits of the health and safety regulation are decided in connection with the claim for damages. This is not a case, for example, in which declaratory relief may be proper, but equitable relief withheld for equitable reasons.
 
 
 17
 Because the plaintiffs sought compensatory damages for the cost of promoting the publication, and also exemplary damages, we must determine whether the school officials violated the plaintiffs' First Amendment rights when the copies of the Joint Effort were seized and distribution on school property prohibited. The question is whether the publication guidelines involved in the stoppage of distribution and subsequent administrative appeal violate the First Amendment.
 
 
 18
 While secondary school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969), neither are their First Amendment rights necessarily "co-extensive with those of adults." Id. at 515, 89 S.Ct. at 741. (Justice Stewart concurring). "It is generally held that the constitutional right to free speech of public secondary school students may be modified or curtailed by school regulations 'reasonably designed to adjust these rights to the needs of the school environment.' " Quarterman v. Byrd, 453 F.2d 54, 58 (4th Cir. 1971).
 
 
 19
 In this case, S.R.R.P. § IVC-2(c) provides in pertinent part: "Distribution may be halted, and disciplinary action taken by the principal after the distribution has begun, if the publication: . . . (5) Encourages actions which endanger the health or safety of students." The school principal, under this regulation, halted and prohibited the further distribution of the student publication that contained an advertisement for drug paraphernalia.
 
 
 20
 Plaintiffs challenge this regulation as being impermissibly vague and thus violative of the First Amendment. We disagree. In Baughman v. Freienmuth, 478 F.2d 1345, 1351 (4th Cir. 1973), we held that a prior restraint regulation "must contain precise criteria sufficiently spelling out what is forbidden so that a reasonably intelligent student will know what he may write and what he may not write." We find no merit to the argument that a reasonably intelligent high school student would not know that an advertisement promoting the sale of drug paraphernalia encourages actions that endanger the health or safety of students. The district court took judicial notice of the problem of drugs in today's society and their danger to the health and safety of those who use them. We find no error in that determination by the district court. Because of the infinite variety of materials that might be found to encourage actions which endanger the health or safety of students, we conclude that the regulation describes as explicitly as is required the type of material of which the principal may halt distribution. See Arnett v. Kennedy, 416 U.S. 134, 161, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974), holding valid against a vagueness claim removal for "such cause as may promote the efficiency of the service." The First Amendment rights of the students must yield to the superior interest of the school in seeing that materials that encourage actions which endanger the health or safety of students are not distributed on school property. Because the only type of material regulated by the guideline is material that must yield to the school's superior interest, we think the guideline does not prohibit constitutionally protected conduct of the students. Thus, the guideline is not unconstitutional on its face.
 
 
 21
 Nor can it be disputed that an advertisement encouraging the use of drugs encourages actions which in fact endanger the health or safety of students. The district court took judicial notice of this, and we agree with that determination. Indeed, the plaintiffs themselves as much as concede that drug use is a harmful activity endangering health and safety.
 
 
 22
 We also find no merit to the argument of plaintiffs that the school officials had to demonstrate that the material would substantially disrupt school activities. We note that the Supreme Court in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 509, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969), and this court in Quarterman, Baughman, and Nitzberg v. Parks, 525 F.2d 378, 382-83 (4th Cir. 1971), indicated that "school authorities may by appropriate regulation, exercise prior restraint upon publications distributed on school premises during school hours in those special circumstances where they can 'reasonably "forecast substantial disruption . . ." ' on account of such printed material." Quarterman v. Byrd, 453 F.2d at 58 (footnote omitted). Such disruption, however, is merely one justification for school authorities to restrain the distribution of a publication; nowhere has it been held to be the sole justification.
 
 
 23
 Nor is the present case in conflict with prior Fourth Circuit cases dealing with high school publications. The nature of the restraint in this case is far less burdensome than was true in Quarterman, Baughman, and Nitzberg. In those cases, the relevant regulations required that the publication be submitted to the principal prior to distribution, whereas here the students were not required to acquire approval before beginning distribution of the paper. Indeed, those cases could be read to apply only to those situations where prior approval from the appropriate school official is required before distribution may occur. See Baughman, 478 F.2d at 1350. In the case at hand, only after the publication was partially distributed did the school authorities even become aware of the contents of the paper. Additionally, the applicable regulations in Quarterman, Baughman, and Nitzberg failed to meet minimum constitutional requirements. In Quarterman, for example, the regulation failed to provide any standard at all for the determination of what materials could be distributed on school grounds. Such is not the case here. Finally, we think the fact that the advertisement was purely commercial is an additional reason for upholding the prohibition against distributing the Joint Effort on school property. Commercial speech, although protected by the First Amendment, is not entitled to the same degree of protection as other types of speech. See, e. g., Bates v. State Bar of Arizona, 433 U.S. 350, 363, 380-82, 97 S.Ct. 2691, 2692, 2707-2708, 53 L.Ed.2d 810 (1977). This case is quite different from one, for example, in which a school prohibits the distribution of a publication containing an article of some literary value that may examine drugs and drug use. The printed material in issue here was paid for by a store seeking to profit from its encouragement of the use of drugs. In Quarterman, Baughman, and Nitzberg, none of the disputed materials involved commercial advertisements.
 
 
 24
 We hold therefore that the regulation which allows the principal to halt the distribution of materials that encourage "actions which endanger the health or safety of students" is not violative of the First Amendment. The school officials thus acted within their constitutional authority in halting and banning the further distribution of the Joint Effort on school property.
 
 
 25
 Plaintiffs also claim that the appeals procedure provided for in S.R.R.P. fails to meet minimum constitutional guarantees, alleging that the length of the appeal in this instance was excessive. We find no merit to that contention.
 
 
 26
 S.R.R.P. § IVC-2(d) provides that if the principal decides to halt distribution of a non-school sponsored publication, he shall state his reasons in writing within two school days and provide the students with a copy of his reasons. S.R.R.P. § XIII Due Process Appeal of the Decision of the Principal, sets out the procedure to be followed for an appeal from the principal's decision. The aggrieved student may, within ten school days, appeal the decision to the area assistant superintendent who must issue a written decision within ten school days after receiving the appeal. If the student requests an informal hearing, the hearing must be held within ten school days, and the assistant superintendent then must render his decision within five school days of the hearing. The student may then appeal an adverse decision to the superintendent of schools who must render his decision in writing within five school days. The guidelines do not provide for an appeal to the School Board. The record in this case indicates that only eight weeks, including holidays, elapsed from the time the distribution was first halted until the superintendent rendered his decision.
 
 
 27
 We hold that the appeals procedure provided for meets the requirement of this court that there be an "adequate and prompt appeals procedure." Quarterman, 453 F.2d at 59; Baughman, 478 F.2d at 1349; Nitzberg, 525 F.2d at 383. First, the time limits are on their face quite reasonable, two days for the principal to state reasons, and ten days for the area assistant superintendent (five if after a hearing), and five days for the superintendent to decide. Ten day limits to appeal decisions of the principal and assistant superintendent discourage delay. Nor was the duration of the administrative appeal in this case unduly long. There is no indication that there was any undue delay in handing down the various decisions required. Also, the record does not disclose what portion of the eight week period was expended by plaintiffs in exercising the various appeals. And we again emphasize that the students were not required to submit a copy of the publication for prior approval, and they were free to distribute the papers off school property the same day distribution on school property was halted, thus lessening the impact from the duration of the administrative appeals process.[8] Therefore, we find no infirmity in the length of the appeals process.
 
 
 28
 In deciding this case, although there was no prior restraint in the sense of previous approval of content of the printed matter, we have, to give the plaintiffs the benefit of the doubt, considered that the regulations complained of come with a presumption of invalidity, Baughman, p. 1348, although, without deciding the question, it may be doubtful that such heavy burden should exist on the facts of this case. In all events, we are of opinion any such burden to establish validity as may exist has been successfully borne by defendants.
 
 
 29
 Were injunctive relief all that plaintiffs prayed for, we would remand for the dismissal of those claims as moot. Jacobs, 420 U.S. p. 130, 95 S.Ct. p. 850. Because we decide the substantive merits of the controversy, however, without considering the availability of injunctive relief because the question is moot, and, of course, not deciding that question, we simply affirm the order of the district court appealed from which entered judgment for the defendants.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 The cartoon shows Patterson dressed as a sheriff in western style clothing. He holds a smoking pistol and the caption reads: "DON' SMOKE DAT EVIL WEED, I'LL BUST YO ASS$"
 
 
 [2]
 S.R.R.P. § IVC-2(d) provides:
 If the distribution is halted, the principal shall state his/her reasons in writing within two school days, providing a copy to the students making the distribution and a copy to the area assistant superintendent. Such a decision may be appealed.
 
 
 [3]
 The principal's letter, dated February 27, 1978, was provided to the students within two school days. School was closed for vacation the week following the distribution halt
 
 
 [4]
 Additionally, in about one-half of the 350 papers printed for distribution was inserted a piece of cigarette rolling paper. Our word assassin is derived from hashish, Webster's Third New International Dictionary (1971) p. 150
 Marijuana, hashish, and cocaine are all controlled substances under both Maryland and federal law. See Md.Code Art. 27, §§ 277, 279, 286, 287; 21 U.S.C. §§ 802, 812, 841, 844, 845.
 
 
 [5]
 The review by the superintendent is the final step provided for by S.R.R.P. The superintendent, in his letter to the students, however, indicated that they could request a hearing before the School Board, which would decide whether to grant the request. The students did not avail themselves of this offer
 
 
 [6]
 Because of its reliance on the health or safety regulation, the district court did not determine whether the prohibition in S.R.R.P. § IVC-2(c)(2) against the distribution of a publication containing libelous material allowed the school to halt distribution because of the cartoon. Our affirmance of the district court on the health or safety ground makes it unnecessary to consider that rule allowing the school to halt the distribution of libelous material
 
 
 [7]
 Plaintiffs also challenged the constitutionality of other aspects of the publication guidelines, on the ground that they were facially invalid. These included (1) the absence of a provision for the principal's failure to explain his reason for halting distribution, within the time required by the rules; (2) the absence of a written requirement of a hearing before the principal; (3) the absence of a time limit for noting an administrative appeal from the superintendent to the school board; (4) the prohibition on distribution of anonymously sponsored publications; and the meaning or definition or lack thereof for the terms (5) "school days"; (6) "distribution"; and (7) "substantial disruption." As we note in the text, plaintiffs concede that these portions of the publication guidelines were not directly involved in the halt of distribution of the Joint Effort
 
 
 [8]
 Plaintiffs rely upon Leibner v. Sharbaugh, 429 F.Supp. 744 (E.D.Va.1977), as authority for the proposition that the duration of the appeals procedure in this case was excessive. In that case, however, as in Nitzberg, 525 F.2d at 383-85, the students were required to submit to the principal a copy of the publication prior to beginning distribution, and no time limit was set within which the principal was required to render a decision. In the case at hand, the principal's halt of distribution is in effect a decision, and he then has only two school days in which to explain his decision. If our decision may be considered to be contrary to Leibner, we decline to follow that case