**William STOIANOFF d/b/a The Joint Effort,**
Plaintiff-Appellant/Cross-Appellee,

v.

**STATE OF MONTANA, et al.,**
Defendants-Appellees/Cross-Appellants.

Nos. 82–3010, 82–3024.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1982.

Decided Jan. 7, 1983.

**1216**

Deirdre Boggs, Missoula, Mont., for Stoianoff.

Christian D. Tweeten, Asst. Atty. Gen., Helena, Mont., for State of Mont.

Before BROWNING, TUTTLE,\* and REINHARDT,\*\* Circuit Judges.

TUTTLE, Circuit Judge:

This appeal involves a pre-enforcement facial challenge to the constitutionality of the Montana Drug Paraphernalia statute, M.C.A. §§ 45–10–101 *et seq.* The district court for the District of Montana found unconstitutional that portion of the "head shop" statute prohibiting the advertising of drug paraphernalia and upheld the constitutionality of the remainder of this statute. We vacate that portion of the district court's decision striking down the advertising prohibition, M.C.A. § 45–10–106, because the plaintiff lacks standing to assert this claim, and affirm the other portions of the district court's opinion, 529 F.Supp. 1197.

## I. BACKGROUND

Montana enacted its drug paraphernalia law on April 21, 1981, to take effect on October 1, 1981.[1] The Montana Act ("the Act") is patterned closely after the Model Drug Paraphernalia Act ("the MDPA" or the "Model Act") authored by the Drug Enforcement Administration of the United

---

\* Honorable Elbert P. Tuttle, Senior U.S. Circuit Judge for the Eleventh Circuit, sitting by designation.

\*\* Judge Reinhardt concurs in the result but on account of illness has been unable to participate in the approval of the opinion.

1. *Montana's Act is set out at Addendum "A."* M.C.A. § 45–10–101 defines drug paraphernalia as any item "used, intended for use, or designed for use" in a large number of activities related to the production or consumption of drugs. The definition also contains a nonexclusive list of items that are deemed drug paraphernalia. M.C.A. § 45–10–102 provides a list of factors that a finder of fact "should

consider" in determining whether an item may be classified as drug paraphernalia. M.C.A. § 45–10–103 makes criminal the use of drug paraphernalia or possession with the intent to use. M.C.A. § 45–10–104 prohibits the manufacture or delivery of drug paraphernalia where the actor knows or "reasonably should know" that an item will be employed to use or produce drugs. M.C.A. § 45–10–105 is a special penalty for delivery of drug paraphernalia to minors. M.C.A. § 45–10–106 is designed to prohibit the advertising of drug paraphernalia. Other sections provide for civil seizure of drug paraphernalia. M.C.A. §§ 44–12–102 to 103.

States Department of Justice.[2] State and local regulation of the sale of drug paraphernalia recently has become a widespread practice. At least 25 states have adopted legislation that to some extent reflects the provisions of the MDPA.[3]

The MDPA and its progeny were designed to overcome the constitutional infirmities of early "headshop" legislation. These laws were written in the belief that the sale of drug paraphernalia encourages the use and sale of illegal drugs. The MDPA's drafters stated that:

> [T]he availability of Drug Paraphernalia has reached epidemic levels. An entire industry has developed which promotes, even glamorizes, the illegal use of drugs, by adults and children alike. Sales of Drug Paraphernalia are reported as high as three billion dollars a year.

MDPA, Prefatory Note.

The constitutionality of these headshop laws has been frequently challenged. Several circuits have rendered opinions on the constitutionality of headshop statutes since the Supreme Court outlined a method for analyzing such pre-enforcement challenges in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Several other circuits proffered rulings on drug paraphernalia statutes before *Flipside* that apparently survive its analysis. The circuits generally have upheld "headshop" statutes, although some courts have chosen to excise constitutionally objectionable language. The Ninth Circuit is one of the few circuits yet to confront these issues.

William Stoianoff, d/b/a The Joint Effort, filed for declaratory and injunctive relief from enforcement of the Act on September 30, 1981. A temporary restraining order, staying enforcement of the Act, was entered on October 1, 1981, and remained in effect until the district court issued its opinion. The district court issued its opinion and order on December 30, 1981. In reviewing that opinion, we are bound by the Supreme Court's opinion in *Flipside*. While the *Flipside* opinion reviewed a licensing statute and in the instant case we are reviewing a series of criminal prohibitions, many of the principles set forth in *Flipside* are nonetheless applicable here. Most important among these is the method of analyzing pre-enforcement facial challenges.

## II. APPROACH TO THE PRE–ENFORCEMENT FACIAL CHALLENGE

Appellant contends that the Act is overbroad and vague on its face. In evaluating this claim, we first reach the overbreadth issue and inquire whether the prohibitions of the Act reach a substantial amount of constitutionally protected conduct. After

---

2. The parties cite only five minor substantive differences between Montana's Act and the MDPA, none of which is relevant to the present controversy.

3. In addition to Montana, states adopting MDPA-style legislation include: Arkansas (Ark.Stat.Ann. § 82–2601(y) (Supp.1981)); Colorado (Colo.Rev.Stat. §§ 12–22–501 to –506 (Supp.1981)); Connecticut (Conn.Gen.Stat. §§ 19–443(20)(a), –472a, –474a (Supp.1982)); Delaware (Del.Code Ann. tit. 16, §§ 4701(13) and 4771–75 (Supp.1980)); Florida (Fla.Stat. 893.12, 893.145, –.146 (Supp.1982)); Georgia (Ga.Code Ann. §§ 16–13–32.1, –32.2 (1982)); Idaho (Idaho Code §§ 37–2701(bb), 37–2734A, –2734B, –2744(a)(7) (Supp.1982)); Kansas (Kan.Stat.Ann. §§ 65–4150 to –4157 (Supp. 1981)); Louisiana (La.Rev.Stat.Ann. §§ 40:1031 to 1036 (West Supp.1982)); Maine (Me. Rev.Stat.Ann. tit. 17–A, § 1111–A (Supp. 1982)); Maryland (Md.Ann.Code, art. 27, §§ 287A and 297 (1982)); Massachusetts (Mass.Ann.Laws ch. 94C, §§ 1, 32I, 47(a)(6) (Michie/Law Co-op Supp.1982)); Nebraska (Neb.Rev.Stat. §§ 28–439 to –444 (Supp.1980)); Nevada (1981 Nev.Stat. 216); New Hampshire (N.H.Rev.Ann. §§ 318–B:1(x–a), :2, :26 (Supp. 1981)); New Jersey (N.J.Stat.Ann. §§ 24:21–46 to –53 (West Supp.1982)); New Mexico (N.M. Stat.Ann. §§ 30–31–2(W), –25.1, –34 (Supp. 1982)); North Dakota (N.Dak.Cent.Code, §§ 12.1–31.1 –01 to –06 (Supp.1981)); Oklahoma (Okla.Stat.Ann. tit. 63, §§ 2–101(32), –101.-1, –405, –503 (West Supp.1981)); Pennsylvania (Pa.Stat.Ann. tit. 35, §§ 780–102(b), –113 (a)(32–34), –113(i), –128(a)(1) (Purdon Supp. 1982)); Texas (Tex.Stat.Ann. art. 4476–15 §§ 1.02(29), 4.07, 5.03(7), 5.15 (Vernon Supp. 1982)); Utah (Utah Code Ann. §§ 58–37a–1 to –6 (Supp.1981)); Virginia (Va.Code §§ 18.2–265.1 to –265.4 (1982)); and Washington (Wash.Rev.Code Ann. §§ 69.50.102, –.412, –.505 (Supp.1982)).

examining the overbreadth claim, we will turn to a consideration of appellant's vagueness arguments. The overbreadth and vagueness arguments will be examined only with respect to the acts prohibited by M.C.A. § 45–10–104, because appellant alleged that he feared prosecution only under this section. We will then turn to appellant's equal protection claim. After considering these arguments, we shall discuss appellant's standing to object to the advertising prohibitions.

## A. Overbreadth

■ To be overly broad, the Act must reach a substantial amount of constitutionally protected conduct. *Flipside,* 102 S.Ct. at 1191. In evaluating this claim, we must consider both the ambiguous and the unambiguous scope of the state's enactment. 102 S.Ct. at 1191, n. 6. It is, of course, solely within the province of the state courts to authoritatively construe state legislation. *See United States v. 37 Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971). "When as here those courts have not spelled out the meaning of a statute, this Court must extrapolate its allowable meaning . . . in a manner that affords the widest latitude to state legislative power consistent with the United States Constitution." *Garner v. Louisiana,* 368 U.S. 157, 174, 82 S.Ct. 248, 257, 7 L.Ed.2d 207 (1961) (Frankfurter, J., concurring). *See also High Ol' Times v. Busbee,* 673 F.2d 1225, 1230 (11th Cir.1982).

■ Appellant argues that the Act is overly broad because it infringes on his constitutionally protected right to operate a business and to earn a livelihood. Appellant contends that *Flipside,* because it considered only a licensing statute, did not reach this question. Appellant also argues that the expansive list of factors in M.C.A. § 45–10–102 allows a trier of facts to consider such things as alternative and unpopular lifestyles, thus implicating appellant's rights of association and speech.

We decline to accept appellant's arguments. The Supreme Court, in *Broadrick v. Oklahoma,* 413 U.S. 601, 613–615, 93 S.Ct. 2908, 2916–18, 37 L.Ed.2d 830 (1973), indicated the strong policy against applying the overbreadth doctrine in a facial review. The only exception to this policy is in the First Amendment area. The appellant failed to make out such a claim with respect to M.C.A. § 45–10–104. The only protected right arguably implicated by the Act is commercial speech. Even that "right," however, is not constitutionally protected in this instance because the statute is expressly directed at commercial activity promoting or encouraging illegal drug use. Thus, "[i]f that activity is deemed 'speech,' then it is speech proposing an illegal transaction, which a government may regulate or ban entirely. *Central Hudson Gas & Electric Co. v. Public Service Comm'n,* 447 U.S. 557, 563–64, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980); *Pittsburgh Press Co. v. Human Relations Comm'n,* 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973)." *Flipside,* 102 S.Ct. at 1192.

Appellant, moreover, has only a limited right to engage in prohibited sales in this case. As the Supreme Court noted in *Flipside,* "A retailer's right to sell smoking accessories, and a purchaser's right to buy and use them, are entitled only to minimal due process protection. Here, the village presented evidence of illegal drug use in the community. Regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging drug use." *Flipside,* 102 S.Ct. 1192, n. 9 (citations omitted).

## B. Vagueness

Upon finding no overbreadth, the Supreme Court instructs that a court next, "examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague *in all of its applications.* A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical

applications of the law." *Flipside*, 102 S.Ct. at 1191 (footnote omitted, emphasis added).

Appellant challenges several provisions of the Act as unconstitutionally vague. While we share some of appellant's concerns, we disagree, in light of the pre-enforcement nature of appellant's challenge, that the law is "invalid *in toto*—and therefore incapable of any valid application—or is overbroad or vague—and therefore no person can properly be convicted under the statute until it is given a narrowing or clarifying instruction . . . ." *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974) (citations omitted).

The void for vagueness doctrine is designed to protect citizens from three consequences of unclear laws:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted).

We now turn to the various provisions of the Act to see if they warrant any of these concerns.

### 1. *Definition of drug paraphernalia*

M.C.A. § 45–10–101 defines drug paraphernalia as any item "used, intended for use, or designed for use" in several activities related to the production or consumption of drugs. Appellant claims that this standard would allow a merchant's conviction based upon the "transferred intent" of a manufacturer or purchaser. Appellant also claims that the imprecise definition of drug paraphernalia admits of arbitrary enforcement against those stores or merchants that a community dislikes merely because of differing lifestyles.

The Supreme Court in *Flipside* specifically held that the language of the Hoffman Estates ordinance, requiring the licensing of any goods "designed for use or marketed for use" with drugs was not impermissible. The court found that the "designed for use" standard referred to objective criteria of an item that made it principally used with illegal drugs and thus there was no danger of a finding of guilt by transferred intent. The court also found that the "marketed for use" standard was clear because it relied upon the retailer's intent and actions in selling the item. The ordinance, so construed, gives adequate notice of that which it prohibits.

We first overcome the appellant's objections to our reliance upon *Flipside*. Even though the ordinance in *Flipside* may properly be characterized as an economic regulation, the Supreme Court undertook a more rigorous analysis than this fact alone would indicate. The Court explained that:

> [T]he village concedes that the ordinance is "quasi-criminal," and its prohibitory and stigmatizing effect may warrant a relatively strict test. *Flipside's* facial challenge fails because, under the test appropriate to either a quasi-criminal or a criminal law, the ordinance is sufficiently clear as applied to Flipside.

*Flipside*, 102 S.Ct. at 1194 (footnote omitted). Moreover, the *Flipside* ordinance and the criminal statute in the instant action regulate business activity of the same nature. The Court recognized that, "businesses, which face economic demands to plan

behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* at 1193.

We feel free, in light of the strictness of the Supreme Court's analysis, to apply its interpretation of "designed for use" to the Montana Act. We are somewhat troubled, however, by the Act's use of the phrase "intended for use" rather than "marketed for use," the language of the Hoffman Estates ordinance. The "intended for use" terminology less obviously refers to the acts of the defendant-merchant. Rather, it may permit some ambiguity in that it could refer to the intent of the manufacturer or of the purchaser. *Flipside* suggests that "intended for use" is a broader standard than "marketed for use." The Court, referring to the latter standard, states, "[t]he standard requires scienter, since a retailer could scarcely 'market' items 'for' a particular use without intending that use." *Flipside,* 102 S.Ct. at 1195.

 The Seventh Circuit, in *Record Head Corp. v. Sachen,* 682 F.2d 672 (7th Cir.1982), was persuaded that the "intended for use" language, when combined with factors similar to those in M.C.A. § 45–10–102 and absent any explicit state of mind requirement, is impermissibly vague. The ordinance in the *Record Head* case focuses on drug paraphernalia and minors and is not modeled closely after the MDPA. The Seventh Circuit, in another post-*Flipside* case, upheld a MDPA-style statute. *Levas & Levas v. Village of Antioch, Illinois, et al.,* 684 F.2d 446 (7th Cir.1982). In *Levas,* the Seventh Circuit adopted the district court's construction of the definition of drug paraphernalia as an inartful, yet legitimate attempt to assign the appropriate scienter requirement to each type of offender. Thus, to be subject to prosecution, the user merely is required to possess an item used to produce or consume drugs ("use"), a manufacturer must design an item that objectively is for use with drugs ("designed for use"), and the retailer or distributor

must sell or market an item with the intent that it be used with drugs ("intended for use"). Under this reading, there is no problem of transferred intent; that is, an innocent retailer may not be convicted for the state of mind of a manufacturer or a purchaser. This interpretation, with which we concur, minimizes the risk of arbitrary enforcement or of inadequate notice. The intent referred to in M.C.A. § 45–10–101 is that of the person who has control of the prohibited drug paraphernalia.

 The broad language of M.C.A. § 45–10–101 does not disturb us because there are so many forms of drug paraphernalia. A definition which casts a wide net is necessary to accomplish the objectives of the Act. All that we must find to sustain the facial constitutionality of the Act is a single clear application of the Act to the appellant. In this case, the sale of a roach clip, an item specified in M.C.A. § 45–10–101 and sold by appellant falls within the core conduct prohibited by the Act and obviates any facial vagueness challenge.[4]

Thus, Amicus California Progressive Business Association's claim that the seller of a garden hose is subject to liability because the hose could be used to water a garden of marijuana plants not only contradicts our interpretation of the Act, but is legally irrelevant under the standard for facial vagueness review established by the Supreme Court in *Flipside.*

### 2. *Reasonably should know*

 MDPA-style statutes are unusual in that the proscribed acts contain in effect two state of mind requirements. The first, for the merchant involved in sales of drug paraphernalia, is that he or she must intend that the item be used to produce or consume drugs. In addition, under M.C.A. § 45–10–104, the merchant must, upon delivery of an item, know or be in a position where he or she "reasonably should know" that the item will be used in the production or consumption of drugs. Several circuits

---

4. The Supreme Court in *Flipside* used the sale of roach clips as an example of prohibited core conduct. 102 S.Ct. at 1195.

have held that this "reasonably should know" language is so vague a standard that it presents the risk of arbitrary enforcement.

The court in *Levas* excised this language from the act because it reasoned that a merchant should not be subject to criminal liability for a mere negligent failure to know the intent of a purchaser. The First Circuit, in *New England Accessories Trade Association, Inc. v. City of Nashua*, 679 F.2d 1 (1st Cir.1982), similarly expressed its disapproval of this language, but upheld the challenged act because of the unusual posture of that case. The Sixth Circuit, in *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 935–36 (6th Cir.1980), originally held that the "reasonably should know" language was unconstitutionally vague because it defined the prohibited offense "in terms of … an individual's ability to perceive rather than his criminal intent." The Sixth Circuit's opinion has since been twice vacated by the Supreme Court. 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981) and 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982). Finally, the Fifth Circuit, in upholding the constitutionality of the Louisiana MDPA-style statute, explicitly noted that the Act omitted the "reasonably should know" language. *Tobacco Accessories & Novelty Craftsmen Merchants Association of Louisiana v. Treen*, 681 F.2d 378, 385 (5th Cir.1982).

We disagree for several reasons that the "reasonably should know" language of M.C.A. § 45–10–104 is constitutionally deficient. First, the Supreme Court repeatedly has held that inclusion of a specific *mens rea* element may alleviate vague notice of conduct prohibited by a law. *Colautti v. Franklin*, 439 U.S. 379, 395 n. 13, 99 S.Ct. 675, 685 n. 13, 58 L.Ed.2d 596 (1979); *Screws v. United States*, 325 U.S. 91, 101–03, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945). Second, the fact that a defendant reasonably should have known something is established in substantially the same manner as actual knowledge. *Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213, 1219 (11th Cir.1982). Third, in light of the unusual nature of the layered state of mind requirements imposed by M.C.A. §§ 45–10–101 and 104, the merchant must have already intended that an item be sold for drug use, under the "intended for use" standard, before his or her knowledge of its use by a buyer comes into play. Once the merchant has passed this threshold, the merchant is required to be aware only of the objective facts that would fairly put him or her on notice of the use for which the product was purchased. *Casbah, Inc. v. Thone*, 651 F.2d 551, 561 (8th Cir.1981), *cert. denied* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874, *reh. denied* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982). *Accord, New England Accessories Trade Association, Inc. v. Tierney*, 691 F.2d 35 (1st Cir.1982).

The Eighth Circuit's reading of the "reasonably should know" language is supported by the drafters of the MDPA. In their comments, the drafters explained their own understanding of the proper construction of that language:

> The knowledge requirement of Section B is satisfied when a supplier: (i) has actual knowledge an object will be used as drug paraphernalia; (ii) is aware of a high probability an object will be used as drug paraphernalia; or (iii) is aware of facts and circumstances from which he should reasonably conclude there is a high probability an object will be used as drug paraphernalia. Section B requires a supplier of potential paraphernalia to exercise a reasonable amount of care. He need not undertake an investigation into the intentions of every buyer, but he is not free to ignore the circumstances of a transaction. Suppliers of objects capable of use as paraphernalia may not deliver them indiscriminately. Since each element of section B must be proven beyond a reasonable doubt, legitimate, prudent suppliers will not be affected by this section.

MDPA Comments, Art. II.

The requirements for criminal liability under the Act's "reasonably should know" standard appear no less specific than the

requirements under a host of other criminal statutes upheld by various courts. *See, e.g., Direct Sales Co. v. United States,* 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943) (unlawful to sell restricted drugs where seller should know physician buyer was distributing illegally); *Gorin v. United States,* 312 U.S. 19, 27–28, 61 S.Ct. 429, 433–34, 85 L.Ed. 488 (1941) (unlawful to convey information under Espionage Act if "reason to believe" information transfer will injure United States); *Danovitz v. United States,* 281 U.S. 389, 397, 50 S.Ct. 344, 345, 74 L.Ed. 923 (1930) ("moonshine paraphernalia"); *United States v. Brooks,* 611 F.2d 614, 617 (5th Cir.1980) (unlawful under 18 U.S.C. § 922 to sell firearms where know or reason to believe buyer not resident of state); *United States v. Featherston,* 461 F.2d 1119, 1121–22 (5th Cir.1972) (unlawful to teach use of firearms or explosives under 18 U.S.C. § 231(a) if know or have reason to know will further civil disorder); *United States v. Novel,* 444 F.2d 114 (9th Cir.1971) (unlawful under 18 U.S.C. § 2512 to send device that know or have reason to know is primarily useful for surreptitious interception of communications).[5]

■ This Court feels it is appropriate to take notice of the danger of discriminatory enforcement of the Act against those who may hold politically unpopular beliefs or lead unusual lifestyles. Yet we have no clear indication that the Act will be enforced in this manner. The possibility that the Act will be enforced arbitrarily, "is of no due process significance unless the possibility ripens into a prosecution." *Flipside,* 102 S.Ct. at 1196 n. 21. The appellant, or any other party, is not prevented by our actions today from attacking the Act once it has been enforced against him.

### C. *Equal protection claim*

■ Appellant argues that the actual purpose of the Act is to put "headshops" out of business. He claims that this "discriminatory purpose," articulated in M.C.A. § 45–10–102 factor 11,[6] will shift the benefits of sales of items that have permissible as well as prohibited uses to favored "legitimate" businesses such as tobacco stores. Appellant suggests that the appropriate standard for review of the Act is that set forth by Justice Marshall in his dissent in *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 318–22, 96 S.Ct. 2562, 2569–71, 49 L.Ed.2d 520 (1976). The test proposed by Justice Marshall, which he contended was the *de facto* test already employed by the Court in equal protection analysis, examines whether any classification meets the *actual* goals of regulation for vital yet non-fundamental rights. Appellant thus contends, because his right to earn a livelihood is implicated and because the Act is not mere economic regulation but involves "symbols" bordering on First Amendment assertions, that this Court should engage in a more rigorous review than a minimum scrutiny of the relation between the Act's ends and means. Appellant also argues that the Act should not be upheld even under the minimum scrutiny standard because purchasers will continue to be able to obtain drug paraphernalia on the black market.

After parsing appellant's claims, we fail to see how an equal protection analysis threatens the constitutionality of the Act. Appellant's argument on the language of M.C.A. § 45–10–102(11) really is a claim of potential discriminatory enforcement. We have already expressed our concerns on this matter but dismissed the relevance of this

---

5. The United States Code is replete with statutes with a reasonably should know or a similar standard, dealing with everything from firearms to automobile bumpers to slugs to prostitutes near military bases. *See, e.g.,* 8 U.S.C. § 1185(a)(2); 15 U.S.C. §§ 78dd–1, 78dd–2, 1397, 1916, 2068, 2614; 18 U.S.C. §§ 491, 922, 954, 1384, 2154, 2423, 2512; 26 U.S.C. § 999; 42 U.S.C. §§ 263j, 5409; 46 U.S.C. § 1461. *Casbah,* 651 F.2d at 561, n. 13.

6. M.C.A. § 45–10–102(11) provides that a factfinder "should consider," in determining whether an item is drug paraphernalia, "whether the owner or anyone in control of the object is a *legitimate* supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products" (emphasis added).

claim in a pre-enforcement context in our discussion of appellant's vagueness argument. Also, we earlier dismissed appellant's argument that the Act implicates vital or fundamental rights. *See* discussion *supra* on overbreadth. Thus, even if we were to accept a "sliding scale" approach to equal protection, we would not find any equal protection violation.

Appellant does not challenge the power of the state government to regulate drug misuse under its health, safety, morals, or general welfare police powers. We find sufficient authority to support the state's regulatory power in this regard. *See Record Head,* 682 F.2d at 679. We disagree with the appellant that there is no rational relationship between the goal of stemming the tide of drug abuse by the means of prohibiting the sale of drug paraphernalia. Moreover, we fail to see any classification in this Act by a *type of store.* Rather, the Act prohibits certain intentional conduct by *all merchants,* thus distinguishing between merchants who engage in that conduct and those who do not. Such classification is eminently rational and not on its face discriminatory. *See Flipside,* 102 S.Ct. 492 to 93, n. 9.

## III. STANDING TO CHALLENGE ADVERTISING PROVISION

The district court found that M.C.A. § 45–10–106, the Act's advertising prohibition, is an unconstitutional infringement on appellant's First Amendment rights. We find that the appellant had no standing to challenge this advertising prohibition and thus vacate that portion of the district court's decision. Appellant admitted, in his brief and at oral argument, that he has no plans to advertise and that he does not fear prosecution under this portion of the statute. This admission negates appellant's claim that advertising is part and parcel of all retail business activity.

Standing of parties to bring their claims is a threshold question a court must face before reaching the substantive issues of a case. Traditionally, courts require that a plaintiff have a "personal stake" in the outcome of a case, "to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Standing issues are complicated, however, in the pre-enforcement facial challenge or declaratory judgment context; when a "plaintiff has alleged an intention to engage in a course of conduct *arguably affected with a constitutional interest,* but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' " *Babbit v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979), *quoting Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973). In such an instance, a plaintiff must demonstrate a genuine threat that the allegedly unconstitutional law is about to be enforced against him. *Steffel v. Thompson,* 415 U.S. 452, 458–59, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *O'Shea v. Littleton,* 414 U.S. 488, 493–99, 94 S.Ct. 669, 674–77, 38 L.Ed.2d 674 (1974); *Brache v. County of Westchester,* 658 F.2d 47 (2d Cir.1981), *cert. denied* 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982). The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III. *Jensen v. National Marine Fisheries Service (NOAA),* 512 F.2d 1189, 1191 (9th Cir.1975).

The Supreme Court has carved an exception out of the rigorous standing requirements where First Amendment speech rights are implicated. In such cases, a plaintiff may assert the constitutional rights of others under the relaxed standards for overbreadth facial challenges involving protected speech. *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). In *Flipside,* however, the Supreme Court resolved the question of the applicability of this standing exception to advertising prohibitions such as the one in the instant action. The Court ruled that

standing for those not directly injured in First Amendment overbreadth cases does not extend to commercial speech, so that Flipside was not allowed to assert the constitutional speech rights of other parties. *Flipside,* 102 S.Ct. at 1192.

■■ Since the appellant does not fall within the standing exception created by *Broadrick* and since clarified by *Flipside,* we must deny him standing to make a facial challenge to a statute claimed to be unconstitutional as applied to the conduct of others. *H.L. v. Matheson,* 450 U.S. 398, 405–06, 101 S.Ct. 1164, 1169, 67 L.Ed.2d 388 (1981). Thus, we are left to consider, "... whether the facts alleged, under all the circumstances, show that there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). *Also see Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), *cert. denied* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1982); *Harris v. McRae,* 448 U.S. 297, 320, 100 S.Ct. 2671, 2689, 65 L.Ed.2d 784 (1980).

Since we find that the appellant failed to show, "any real or threatened injury at the hands of persons acting under the authority granted by the statute," *Western Mining Council,* 643 F.2d at 624, we hold that appel-lant did not plead sufficient facts for the district court to have a conferred standing upon him. We therefore vacate this portion of the district court's decision. We do not reach the issue of whether the Act violates the protections for commercial speech set forth in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). We affirm the remainder of the district court's decision.

ADDENDUM "A"

## CHAPTER 10

## MODEL DRUG PARAPHERNALIA ACT

### Part 1—General Provisions

Section

45–10–101. Definitions.

45–10–102. Determination of what constitutes paraphernalia.

45–10–103. Criminal possession of drug paraphernalia.

45–10–104. Manufacture or delivery of drug paraphernalia.

45–10–105. Delivery of drug paraphernalia to a minor.

45–10–106. Advertisement of drug paraphernalia.

45–10–107. Exemptions.

---

### Part 1
### General Provisions

**Part Compiler's Comments**

*1981 Title:* The title to Ch. 481, L. 1981 (HB 300), read: "An act to enact the provisions of the Model Drug Paraphernalia Act; providing for a definition of drug paraphernalia; providing penalties for its sale, possession, or advertisement; and providing for forfeiture; amending sections 44–12–102 and 44–12–103, MCA."

*Source:* This part is based on the Model Drug Paraphernalia Act promulgated by the Drug Enforcement Administration of the United States Department of Justice.

*Severability:* Section 10, Ch. 481, L. 1981, was a severability section.

---

**45–10–101. Definitions.** (1) As used in this part, the term "drug paraphernalia" means all equipment, products, and materials of any kind that are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting,

manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a dangerous drug. It includes but is not limited to:

(a) kits used, intended for use, or designed for use in planting, propagating, cultivating, growing, or harvesting of any species of plant that is a dangerous drug or from which a dangerous drug can be derived;

(b) kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing dangerous drugs;

(c) isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant that is a dangerous drug;

(d) testing equipment used, intended for use, or designed for use in identifying or in analyzing the strength, effectiveness, or purity of dangerous drugs;

(e) scales and balances used, intended for use, or designed for use in weighing or measuring dangerous drugs;

(f) dilutents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose, and lactose, used, intended for use, or designed for use in cutting dangerous drugs;

(g) separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from or in otherwise cleaning or refining marijuana;

(h) blenders, bowls, containers, spoons, and mixing devices used, intended for use, or designed for use in compounding dangerous drugs;

(i) capsules, balloons, envelopes, and other containers used, intended for use, or designed for use in packaging small quantities of dangerous drug;

(j) containers and other objects used, intended for use, or designed for use in storing or concealing dangerous drugs;

(k) objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, or other dangerous drug as defined by 50–32–101 into the human body, such as:

(i) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(ii) water pipes,

(iii) carburetion tubes and devices;

(iv) smoking and carburetion masks;

(v) roach clips, meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(vi) miniature cocaine spoons and cocaine vials;

(vii) chamber pipes;

(viii) carburetor pipes;

(ix) electric pipes;

(x) air-driven pipes;

(xi) chillums;

(xii) bongs;

(xiii) ice pipes or chillers.

(2) Words or phrases used in this part that are not defined by this section have the meaning given to them by the definitions contained in 50–32–101 unless the usage clearly indicates a different intent.

**History: En. Sec. 1, Ch. 481, L.1981.**

**45–10–102. Determination of what constitutes paraphernalia.** In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(1) statements by an owner or by anyone in control of the object concerning its use;

(2) prior convictions, if any, of an owner or of anyone in control of the object, under any state or federal law relating to any controlled substance or dangerous drug;

(3) the proximity of the object, in time and space to a direct violation of this part;

(4) the proximity of the object to dangerous drugs;

(5) the existence of any residue of dangerous drugs on the object;

(6) direct or circumstantial evidence of the intent of an owner or of anyone in control of the object to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of 45–10–103 through 45–10–106. The innocence of an owner or of anyone in control of the object as to a direct violation of 45–10–103 through 45–10–106 does not prevent a finding that the object is intended for use or designed for use as drug paraphernalia.

(7) instructions, oral or written, provided with the object concerning its use;

(8) descriptive materials accompanying the object which explain or depict its use;

(9) national and local advertising concerning its use;

(10) the manner in which the object is displayed for sale;

(11) whether the owner or anyone in control of the object is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

(13) the existence and scope of legitimate uses for the object in the community;

(14) expert testimony concerning its use.

**History: En. Sec. 2, Ch. 481, L.1981.**

**45–10–103. Criminal possession of drug paraphernalia.** It is unlawful for any person to use or to possess with intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a dangerous drug. Any person who violates this section is guilty of a misdemeanor and upon conviction shall be imprisoned in the county jail for not more than 6 months, fined not more than $500, or both.

**History: En. Sec. 3, Ch. 481, L.1981.**

**45–10–104. Manufacture or delivery of drug paraphernalia.** It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing or under circumstances where one reasonably should know that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a dangerous drug. Any person who violates this section is guilty of a misdemeanor and upon conviction shall be imprisoned in the county jail for not more than 6 months, fined not more than $500, or both.

**History: En. Sec. 4, Ch. 481, L.1981.**

**45–10–105. Delivery of drug paraphernalia to a minor.** Any person 18 years of age or over who violates 45–10–104 by delivering drug paraphernalia to a person under 18 years of age who is at least 3 years his junior is guilty of a misdemeanor and upon conviction shall be imprisoned in the county jail for not more than 1 year, fined not more than $1,000, or both.

**History: En. Sec. 5, Ch. 481, L.1981.**

**45–10–106. Advertisement of drug paraphernalia.** It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement knowing or under circumstances where one reasonably should know that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia. Any person who violates this section is guilty of a misdemeanor and upon conviction shall be imprisoned in the county jail for not more than 6 months, fined not more than $500, or both.

**History: En. Sec. 6, Ch. 481, L.1981.**

**45–10–107. Exemptions.** Practitioners and agents under their supervision acting in the course of a professional practice as defined by 50–32–101 are exempt from this part.

**History: En. Sec. 7, Ch. 481, L.1981.**

**44-12-101. Definition of controlled substance.** As used in this chapter, "controlled substance" means any substance designated as a dangerous drug pursuant to Title 50, chapter 32, parts 1 and 2.

**History: En. Sec. 1, Ch. 529, L.1979.**

**44-12-102. Things subject to forfeiture.** (1) The following are subject to forfeiture:

(a) all controlled substances that have been manufactured, distributed, prepared, cultivated, compounded, processed, or possessed in violation of Title 45, chapter 9;

(b) all money, raw materials, products, and equipment of any kind that are used or intended for use in manufacturing, preparing, cultivating, compounding, processing, delivering, importing, or exporting any controlled substance in violation of Title 45, chapter 9, except items used or intended for use in connection with quantities of marijuana in amounts less than 250 grams;

(c) except as provided in subsection (2)(d), all property that is used or intended for use as a container for anything enumerated in subsection (1)(a) or (1)(b);

(d) except as provided in subsection (2), all conveyances, including aircraft, vehicles, and vessels:

(i) which are used or intended for use in unlawfully transporting or in any manner facilitating the transportation of anything enumerated in subsection (1)(a) or (1)(b) for the purpose of sale or receipt of such thing;

(ii) in which a controlled substance is unlawfully kept, deposited, or concealed; or

(iii) in which a controlled substance is unlawfully possessed by an occupant;

(e) all books, records, and research products and materials, including formulas, microfilm, tapes, and data, that are used or intended for use in violation of Title 45, chapter 9; and

(f) all drug paraphernalia as defined in 45-10-101.

(2) (a) No conveyance used by a person as a common carrier in the transaction of business as a common carrier is subject to forfeiture under this section unless it appears that the owner or other person in charge of the conveyance is a consenting party or privy to a violation of Title 45, chapter 9.

(b) No conveyance is subject to forfeiture under this section because of any act or omission established by the owner of the conveyance to have been committed or omitted without his knowledge or consent.

(c) A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if he neither had knowledge of nor consented to any violation of Title 45, chapter 9.

(d) No conveyance or container is subject to forfeiture under this section if it was used or intended for use in transporting less than 250 grams of marijuana.

**History: En. Sec. 2, Ch. 529, L.1979; amd. Sec. 8, Ch. 481, L.1981.**

**Compiler's Comments**
*1981 Amendment:* Inserted subsection (1)(f).

*Severability:* Section 10, Ch. 481, L. 1981, was a severability section.

---

**44-12-103. When property may be seized.** (1) A peace officer who has probable cause to make an arrest for a violation of Title 45, chapter 9, probable cause to believe that a conveyance has been used or is intended to be used to unlawfully transport a controlled substance, or probable cause to believe that a conveyance has been used to keep, deposit, or conceal a controlled substance shall seize the conveyance so used or intended to be used or any conveyance in which a controlled substance is unlawfully possessed by an occupant. He shall immediately deliver a conveyance that he seizes to the sheriff of the county in which the seizure is made, to be held as evidence until forfeiture is declared or release ordered.

(2) All property subject to forfeiture under 44-12-102 may be seized by a peace officer under a search warrant issued by a district court having jurisdiction over the property. Seizure without a warrant may be made if:

**1228**

(a) the seizure is incident to an arrest or a search under a search warrant issued for another purpose or an inspection under an administrative inspection warrant;

(b) the property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal proceeding or a forfeiture proceeding based on this chapter;

(c) the peace officer has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(d) the peace officer has probable cause to believe that the property was used or is intended to be used in violation of Title 45, chapter 9, or in violation of Title 45, chapter 10, part 1.

**History: En. Sec. 3, Ch. 529, L.1979; amd. Sec. 9, Ch. 481, L.1981.**

**Compiler's Comments**
*1981 Amendment:* Added "or in violation of Title 45, chapter 10, part 1" to (2)(d).

*Severability:* Section 10, Ch. 481, L. 1981, was a severability section.