NOVA RECORDS, INC., an Indiana Corporation; the Cotton Patch, Inc., an Indiana corporation; Martin L. Barmes and Barbara J. Barmes, d/b/a Barbara's Gift Shop, Plaintiffs,

v.

Theodore L. SENDAK, Individually and in his official capacity as Attorney General of the State of Indiana et al., Defendants.

No. IP 80–431–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Dec. 9, 1980.

rup, Goldstein,
Jenkins & Pritzker, Chicago, Ill., Stephen
W. Dillon of Bowman, Visher & Dillon,
Indianapolis, Ind., for plaintiffs.

Theodore L. Sendak, Atty. Gen. by David
Michael Wallman and Eric M. Cavanaugh,
Deputy Attys. Gen., for State of Ind., Indianapolis, Ind., for defendants.

MEMORANDUM OF DECISION

NOLAND, District Judge.

Plaintiffs in this action seek to have Indiana House Enrolled Act Number 1468, codified at *Ind.Code* § 16–6–8.5–5 and §§ 35–
48–4–8.1 to 8.3 (Supp.1980), which impose
criminal penalties and forfeiture for the
possession, delivery, manufacture, conveyance, and containment of items of paraphernalia, declared facially unconstitutional. Jurisdiction is founded upon the provisions of 28 U.S.C. §§ 1331, 1343(3) and (4),
2201, and 2202. Plaintiffs operate retail
establishments in Marion, Hamilton, Bartholomew and Knox Counties which display
and offer for sale a variety of merchandise

including records, tapes, stereo equipment, clothing, jewelry, snuff products and accessories, as well as tobacco goods and accessories. Defendants consist of the Attorney General for the State of Indiana and Prosecuting Attorneys for Marion, Bartholomew, and Knox Counties in Indiana. The cause came before the Court on July 18, 1980 for argument on the merits, the Court having previously, on May 20, 1980, denied plaintiffs' request for a temporary restraining order, after which time the parties were permitted to submit such post-trial briefs and materials as they deemed necessary to facilitate the Court's ruling in the matter. For the reasons which follow, the Court has concluded that the challenged statutory provisions are constitutional and entitled to be given full force and effect.

## I. BACKGROUND

On February 4, 1980, a three judge panel declared *Ind.Code* §§ 35–48–4–8 and 9 to be unconstitutionally vague and therefore unenforceable. *Indiana Chapter, National Organization for the Reform of Marijuana Laws, Inc. (NORML), et al v. Sendak, et al,* No. TH 75–142–C (S.D.Ind., February 4, 1980).[1] These provisions constituted Indiana's drug paraphernalia laws, and represented the State's most recent effort to outlaw the possession, manufacture, and sale of drug paraphernalia. Subsequent to the *NORML* ruling, Indiana replaced the invalidated statutes with *Ind.Code,* §§ 35–48–4–8.1 to 8.3, and § 16–6–8.5–5 (Supp. 1980). The revised provisions were patterned largely after the Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the United States Department of Justice in August, 1979, and read as follows:

35–48–4–8.1. Manufacturer of Paraphernalia.—A person who knowingly or intentionally manufactures or designs an in-

strument, device, or other object that he intends to be used primarily for:

(1) Introducing into the human body a controlled substance;

(2) Testing the strength, effectiveness, or purity. of a controlled substance; or

(3) Enhancing the effect of a controlled substance;

in violation of this chapter, commits manufacture of paraphernalia, a Class D felony.

35–48–4–8.2. Dealing in Paraphernalia. —A person who knowingly or intentionally delivers a raw material, instrument, device, or other object that he intends to be used primarily for:

(1) Introducing into the human body a controlled substance;

(2) Testing the strength, effectiveness, or purity of a controlled substance; or

(3) Enhancing the effect of a controlled substance;

in violation of this chapter, commits dealing in paraphernalia, a Class D felony.

35–48–4–8.3. Possession of Paraphernalia.—(a) A person who possesses a raw material, instrument, device, or other object that he intends to use for:

(1) Introducing into his body a controlled substance;

(2) Testing the strength, effectiveness, or purity of a controlled substance; or

(3) Enhancing the effect of a controlled substance;

in violation of this chapter commits possession of paraphernalia, a Class D felony.

(b) However, the offense is a Class A misdemeanor if a person:

(1) Intends to use the raw material, instrument, device, or other object in connection with marijuana, hash oil, or hashish; and

---

1. The judgment of the district court in *NORML* was vacated by the Seventh Circuit Court of Appeals following repeal by the Indiana General Assembly of the statutes underlying the appeal. The petition for rehearing filed by plaintiff/appellees in seeking reinstatement of the decision was denied on October 7, 1980. In view of the similarity of the issues raised in this

action to those raised in *NORML,* and in view of the fact that plaintiffs have urged this Court to reach conclusions similar to those reached in *NORML* in regard to the newly-revised statutory provisions, the Court will refer to the decision and reasoning therein in the course of this opinion.

(2) Has not had a prior conviction of an offense involving marijuana, hash oil, or hashish.

16–6–8.5–5. Forfeitures.—

(a) The following are subject to forfeiture:

(1) All controlled substances that are or have been unlawfully manufactured, distributed, dispensed, acquired, or possessed, or with respect to which there has been any act by any person in violation of laws relating to controlled substances.

(2) All raw materials, instruments, devices, and other objects that are used, or intended for use by the person in possession of them, in unlawfully planting, growing, manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance.

(3) All property that is used, or intended for use by the person in possession of them, as a container for property described in clause (1) or (2) or this subsection.

(4) All conveyances, including vehicles, that are used, or intended for use by the person in possession of them, to transport, or in any manner to facilitate the transportation, for the purpose of sale, receipt, possession, or concealment of property described in subdivision [clause] (1) or (2) of this subsection . . . .

(5) All books, records, and research products and materials, including formulas, microfilm, tapes, and data which are used, or intended for use by the person in possession of them, in violation of a law relating to controlled substances.

(b) Property subject to forfeiture under this chapter may be seized by any enforcement officer upon process issued by any state court of record having jurisdiction over the property. Seizure without process may be made if:

(1) The seizure is incident to an arrest, to a search under a search warrant, or to an inspection under an administrative inspection warrant;

(2) The property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal injunction or forfeiture proceeding;

(3) The state board of pharmacy has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(4) The board has probable cause to believe that the property was used or is intended to be used by the person in possession of it in violation of a law relating to controlled substances. . . .

The Model Drug Paraphernalia Act upon which these statutory provisions were largely based was drafted at the request of various state authorities in an effort to cope with what local authorities have almost universally recognized to be a major drug-related problem: the encouragement of the use of illicit drugs by glamorizing and heavily promoting increasingly available drug paraphernalia. In the language of the Prefatory Note to the Model Act:

> [T]he availability of Drug Paraphernalia has reached epidemic levels. An entire industry has developed which promotes, even glamorizes, the illegal use of drugs by adults and children alike. Sales of Drug Paraphernalia are reported as high as three billion dollars a year. What was a small phenomenon at the time the Uniform [Controlled Substances] Act was drafted has now mushroomed into an industry so well-entrenched that it has its own trade magazines and associations.

*Prefatory Note, Model Drug Paraphernalia Act* (U.S.Dept. of Justice, August, 1979). The Model Act has been adopted by at least ten state legislatures, and to date no court has found it to be unconstitutional, despite numerous challenges. *Mid-Atlantic Accessories Trade Association, et al v. State of Maryland,* 500 F.Supp. 834 at 841 (D.Md. 1980)

## II. CONTENTIONS

Plaintiffs in this action contend that the statutes, even as revised, remain constitutionally deficient. In their action for damages and declaratory and injunctive relief under the provisions of 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, they assert and argue numerous bases for relegating the most recent paraphernalia provisions to the

same fate as that of their predecessors. Among plaintiffs' contentions are:

(1) The challenged provisions fail to give adequate notice as to what conduct is proscribed, or to establish standards by which law enforcement officials may determine the existence or nonexistence of a violation under the statutes, rendering the provisions unconstitutionally vague on their face under the Fourteenth Amendment;

(2) The statutory scheme is overbroad, and not a rational or workable means of achieving the legitimate goal of preventing the unlawful use of controlled substances, and thus violates due process strictures, and exceeds the bounds of the State's police powers;

(3) The statutes impinge upon First Amendment freedoms by impermissibly restricting protected commercial and symbolic speech due to their vague and overbroad construction;

(4) The statutes condone and permit cruel and unusual punishment by permitting imposition of punishment and forfeiture for innocent activities, in violation of the Eighth Amendment;

(5) The statutes substantially and impermissibly interfere with interstate commerce by subjecting individuals to criminal penalties for shipment or delivery of legitimate goods, in violation of Commerce Clause provisions; and

(6) The statutes result in a denial of the equal protection guarantees of the Fourteenth Amendment by permitting law enforcement officials to seize merchandise and arrest merchants whose inventory, in another retail setting, would be deemed legitimate, and because such discriminatory treatment bears no rational relationship to the legitimate goal of reducing drug abuse.

█ Defendants not only contend that the challenged statutes are, as amended, constitutionally sound, but have additionally suggested that the named plaintiffs herein lack standing to maintain the action, and that the Court abstain from exercising jurisdiction in the case, so as to allow state court resolution of the issues raised. Neither the standing nor abstention arguments have merit under the circumstances of this case. First, plaintiffs need not actually be prosecuted under the challenged statutes in order to initiate a review of their validity. So long as the threat of prosecution is not imaginary or speculative, a plaintiff demonstrates an Article III controversy sufficient to invoke judicial scrutiny. *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). Nor are plaintiffs first required to seek vindication of their federal rights in a state court declaratory judgment action. *Steffel, supra*, at 475, 94 S.Ct. at 1224 n. 22. At the time of oral argument in this cause, the Court took judicial notice of two criminal prosecutions instituted against individuals, not plaintiffs herein, but similarly situated and engaged in similar business endeavors, under the statutes challenged in this action. This observation, along with the principles announced in *Steffel, supra*, leave the Court with no doubt as to the ability of the named plaintiffs to maintain this action.

█ Insofar as the abstention argument is concerned, it is clear that none of the pro-abstention factors outlined in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) exist in the present case. *Pullman* dictates abstention by a federal court where (a) a state court interpretation of a challenged statute will either render unnecessary or substantially modify the federal constitutional questions raised; (b) the state law issues are particularly difficult, obscure or unresolved, so that the state judiciary is best suited to an initial determination; and (c) an ongoing state scheme or regulatory program would be exposed to excessive confusion and indirection by a federal interpretation of its statutory foundation which may conflict with subsequent state court determinations. *See High Ol' Times v. Busbee*, 621 F.2d 135, 139 (5th Cir. 1980). Abstention is the exception rather than the rule, *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), and should only be applied when the court is convinced that at least one of the *Pullman* factors is

present. *Busbee, supra,* 621 F.2d at 139. Under the facts of the present case it is clear that abstention would be inappropriate. No difficult, obscure, or unresolved questions of state law have been presented, and state court resolution of any state law issues which do exist would not obviate the need to resolve the federal constitutional issues which constitute the bulk of plaintiffs' complaint. Further, no confusion or inconsistency will be interjected into an ongoing State program or regulatory scheme as a result of a decision by this Court, inasmuch as the challenged statutory provisions will either be upheld or invalidated as a result of the Court's ruling. *See Indiana Chapter, National Organization for the Reform of Marijuana Laws, (NORML), et al v. Sendak, et al, supra,* at 9. Accordingly, the Court will neither abstain nor dismiss this action for want of standing.

### III. DISCUSSION

■ Various grounds for relief asserted by the plaintiffs clearly lack merit under the facts and circumstances of this case and may be disposed of in more or less summary fashion. For example, in their equal protection argument, plaintiffs contend that the challenged provisions create statutory classifications not reasonably related to a legitimate state purpose. If such were true, a violation of the equal protection clause of the Fourteenth Amendment would indeed be present. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). However, HEA 1468 on its face creates no such classifications. Its provisions are equally applicable to all, and there is no indication that the Act's drug paraphernalia proscriptions will be discriminatorily applied. To the extent that subsequent events show a disproportionate impact of enforcement on enterprises in the nature of those operated by the plaintiffs herein, such result may be justified on the basis of the recognized likelihood that such shops will contain objects constituting paraphernalia under the statutes. *Mid-Atlantic Accessories Trade Association, supra,* at 849, citing *Williams v. Spencer,* 622 F.2d 1200, 1204 (4th Cir. 1980). Even a statutory "classification" under such circumstances would bear a rational relationship to the legitimate goal of eradicating drug paraphernalia. *Id.* Thus, plaintiffs' equal protection claims are without merit.

■ A similar result may be reached in connection with the interstate commerce arguments. Plaintiffs contend that the paraphernalia provisions will subject individuals to criminal penalties for the shipment of goods which are legitimate, but which are equally suited for use in connection with illicit drugs. This argument is without substance. Not only will the intent requirement of the challenged statutes, discussed subsequently in more detail, prevent imposition of criminal penalties upon innocent shippers of legitimate goods, but the effect of the provisions, if any, on interstate commerce will be both incidental and fully justified. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

■ Nor do the challenged provisions permit cruel and unusual punishment of innocent activity in violation of the Eighth Amendment. The statutes insure that those lacking the requisite intent or knowledge will not be subjected to any punishment whatsoever. In view of the stringent nature of the intent requirement, the Court is unable to imagine a situation or circumstances resulting in conviction and punishment lacking in the essential element of intent. Plaintiffs' Eighth Amendment arguments must fail accordingly.

■ Plaintiffs' First Amendment claims must meet a similar end. They assert that, as a result of the vague and overbroad construction of the paraphernalia provisions, protected commercial or symbolic speech will be impermissibly restricted. However, there is simply no basis for such an assertion. *Ind.Code* §§ 35–48–4–8.1 to 8.3 make it unlawful for an individual to intentionally or knowingly manufacture, design, deliver, or possess raw materials, instruments, devices or other objects which he intends to use or to be used for specifically stated purposes relating to consump-

tion, testing, or enhancing the effect of controlled substances. These provisions leave no room for interference with speech-related materials not falling within the stated categories of illegal items. *Ind.Code* § 16–6–8.5–5(a)(5) provides for forfeiture of various books, records, and research materials used or intended for use by the possessor for a purpose illegal under laws relating to controlled substances. Such can hardly be interpreted to prohibit or unduly restrict advertising or promotional materials pertaining to items intended or used for illegal purposes. It is clear that speech soliciting illegal conduct is not protected by the Constitution. *Pittsburgh Press v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). Further, where a commercial activity itself is illegal, and restrictions on advertising are incidental to a valid limitation of that activity, no First Amendment principles are violated. *Id.* at 391, 93 S.Ct. at 2561. It is equally clear that the intent requirements of the Indiana statutes prevent a wholesale assault on unpopular, but legal, commercial or symbolic speech. Without the requisite connection with intentional and knowing consumption, testing, or enhancement of controlled substances, or the solicitation to engage in such illegal activities, speech-related materials are not subject to interference or forfeiture. Such a state of affairs cannot support plaintiffs' First Amendment claims.

The most cogent arguments raised by the plaintiffs are those attacking the paraphernalia provisions as being unconstitutionally vague and overbroad on their face. It is to these arguments that the following discussion is directed.

## A. VAGUENESS

█ In order to comport with due process requirements under the Fourteenth Amendment, a statute or ordinance must (a) give adequate prior notice to those who must conform their conduct to the dictates of the law, and (b) be sufficiently definite so as to provide workable standards for enforcement and adjudication. *Grayned v.*

*City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Hejira Corporation, et al v. J. D. Mac Farlane, et al*, No. 80–F–724 (D.Colo., September 25, 1980). Mere use of general language does not make a statute unconstitutionally vague. *United States v. Petrillo*, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); *United States v. Ryan*, 284 U.S. 167, 52 S.Ct. 65, 76 L.Ed. 224 (1931).

█ Plaintiffs contend that the challenged statutes fail to adequately apprise those subject to their provisions of what is prohibited, and that they permit arbitrary and discriminatory enforcement by failing to outline standards for their enforcement and application. Although numerous paraphernalia statutes have been deemed unconstitutionally deficient when subjected to an attack of this nature, statutes patterned after the Model Act have almost unanimously been upheld by virtue of the requirement of specific intent that items falling within the category of "paraphernalia" be used for specific drug-related purposes. *See Mid-Atlantic Accessories Trade Association, et al v. State of Maryland, supra,* at 842; *Tobacco Accessories v. Treen,* 501 F.Supp. 168, 49 U.S.L.W. 2341 (E.D.La. October 28, 1980). In some respects *Ind.Code* §§ 35–48–4–8.1 to 8.3 are more succinct and clear than the Model Act. Like the Model Act, they require that inanimate objects, in order to qualify as paraphernalia and therefore be both subject to control and the basis for imposition of criminal penalties, be used, intended for use, designed, manufactured, or delivered primarily for use in connection with illicit drugs. Unlike the Model Act, the Indiana provisions do not itemize or provide a "laundry list" of objects which, coupled with the requisite intent, constitute drug paraphernalia. Rather than cast a pall upon particular items deemed especially susceptible to drug-related use, the statutes make the intended use for "(1) [i]ntroducing into the human body a controlled substance; (2) [t]esting the strength, effectiveness, or purity of a controlled substance; or (3) [e]nhancing the effect of a controlled substance ..." paramount in importance.

Thus specific intent to use an item for an illegal purpose is the essence of the statutory offense. Plaintiffs contend that the emphasis on the intent element of the offenses, coupled with a likelihood that intent will be inferred by police, prosecutors, judges, and juries from mere possession of "disfavored items," render the statutes unconstitutional. The Court cannot ascribe to this viewpoint. In all probability, the requirement that criminal intent be proven as an essential element of a paraphernalia offense favors defendants, inasmuch as there may often be no overt act, such as blatant demonstration or instruction as to an item's drug-related use, to supplement the particularly difficult evidentiary burden of proving intent.

The Court cannot under any circumstances speculate upon or anticipate illegal or unjustified actions on the part of law enforcement officials. Nor can it presume that an adequately instructed jury will disregard the burden of proof in regard to the element of intent. It can only assess the facial validity of the provisions with an eye toward their compliance with the due process standards outlined in *Grayned, supra.* Within such constraints, the Court has concluded that *Ind.Code* §§ 35–48–4–8.1 to 8.3 are constitutionally sound in all respects. Persons of ordinary intelligence are put on notice that items intended for ingesting, testing, or enhancing the effect of a controlled substance will be deemed to fall within the category of drug paraphernalia to the detriment of one who manufactures, designs, delivers, or possesses such items with the intent that they be so used. Law enforcement officials are, in addition to the stated uses, made keenly aware via the statutory language that objects alone, without specific unlawful intent, will not serve as a basis for conviction under the statutes.

The statutory language is unequivocal, and nebulous terms and phrases utilized in prior legislative attempts to regulate drug paraphernalia, and found constitutionally troublesome by the Court in *NORML, supra,* have been eliminated. In short, the revised Indiana provisions patterned after the Model Act are not unconstitutionally vague.[2]

The same result may be reached in connection with *Ind.Code* § 16–6–8.5–5(a)(5), the forfeiture statute. Items and materials used or intended for use in violation of laws relating to controlled substances may be seized and forfeited under the statute. The element of intent to violate criminal statutes is essential to the imposition of the forfeiture penalty. Thus, the forfeitable categories of books, records, formulas, and research materials which plaintiffs assert are unconstitutionally vague and impinge upon First Amendment freedoms may only encompass items for which the individual in possession intends an unlawful drug-related use. As so interpreted, *Ind.Code* § 16–6–8.-5–5(a)(5) cannot be deemed unconstitutionally vague.

## B. OVERBREADTH

Plaintiffs additionally argue that the challenged statutes are facially overbroad, in that their expansive provisions permit enforcement against activities which in ordinary circumstances would constitute an exercise of First Amendment rights. *See Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940). The potential for arbitrary and censorial enforcement, plaintiffs contend, serves to chill lawful First Amendment conduct, and will stifle lawful speech which, depending upon the interpretation of enforcement officials, could subject them to prosecution and imposition of penalties. As so framed, this argu-

---

2. It is interesting to note that Indiana's former "burglary tool" statute, *Ind.Code* § 35–13–8–1, repealed as of the effective date of Indiana's revised Penal Code on October 1, 1977, made possession of "burglary tools" by a convicted felon an offense punishable by confinement for a term of from two to fourteen years, and permitted intent to commit burglary to be inferred from mere possession of such seemingly innocent items as crowbars and screwdrivers. The statute, far more susceptible to a vagueness challenge in the opinion of this Court than the provisions currently under consideration, has survived numerous constitutional attacks. *See, e. g., Duncan v. State,* 409 N.E.2d 597 (Ind.1980); *Goldstine v. State,* 234 Ind. 388, 126 N.E.2d 581 (1955).

ment is closely related to the vagueness challenge, already held by the Court to be without merit. As the Court held in *Mid-Atlantic Accessories Trade Association, et al v. State of Maryland, supra,* "[r]easonable people can readily tell whether their conduct will be violative of the law because it is their own state of mind which is ultimately determinative." *Id.* at 847. As previously stated, the Court cannot speculate as to the possibility of illegal enforcement efforts on the part of a particular law enforcement organization. Nor would the possibility of an isolated instance of over-zealous enforcement serve as a basis for striking down statutes such as those presently under consideration. As written, the statutes are reasonably clear, precise, and straightforward in defining prohibited conduct. Reasonably interpreted, they are not overbroad.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that *Ind.Code* §§ 35–48–4–8.1 to 8.3 and 16–6–8.5–5 are constitutionally sound and entitled to enforcement. Substantially revised from their earlier form, and patterned closely after the Model Act, the provisions represent a carefully considered effort to combat a recognized and growing drug problem legitimately within the realm of state regulation. No reason exists to believe that they will not be enforced with equal care and precision.

The foregoing constitute the Court's findings of fact and conclusions of law in connection with this matter.