HIGH GEAR AND TOKE SHOP; Shadowfax, Inc., a Colorado corporation d/b/a Krackers Tapes & Records # 24; Wayne L. Stansbury d/b/a Budget Tapes and Records # 17, Plaintiffs-Appellants,

v.

Paul Q. BEACOM in his official capacity as District Attorney for the County of Adams; Bert Johnson in his official capacity as Sheriff for the County of Adams; Kenneth Huck in his official capacity as Chief of Police for the City of Westminster, Defendants-Appellees.

Deborah MARKS, and Thomas A. Marks, d/b/a Independent Records # 3; Independent Records of Cinderella City, Inc., a Colorado corporation d/b/a Independent Records # 1; James Brothers, Inc., a Colorado Corporation d/b/a Krackers Tapes & Records #1 and Krackers Tapes and Records # 2; L.E.L., Inc., a Colorado corporation d/b/a Mom's Place, Plaintiffs-Appellants,

v.

Nolan L. BROWN in his official capacity as District Attorney for the County of Jefferson; Harold Bray in his official capacity as Sheriff for the County of Jefferson, Defendants-Appellees.

Nos. 82SA525, 83SA287.

Supreme Court of Colorado, En Banc.

Oct. 22, 1984.

---

Arthur M. Schwartz, P.C., Arthur M. Schwartz, Kay J. Rice, Bradley J. Reich, Denver, for plaintiffs-appellants.

Paul Q. Beacom, Dist. Atty., Steven L. Bernard, Chief Trial Deputy Dist. Atty., Brighton, for defendants-appellees.

ROVIRA, Justice.

The appellants challenge the constitutionality of the "Control of Drug Paraphernalia" Act (the Act), section 12–22–501 to 506, 5 C.R.S. (1983 Supp.). They present two grounds for invalidating the Act as unconstitutional: (1) it violates the due process clause of the United States Constitution and the Colorado Constitution due to overbreadth and vagueness; and (2) it violates their rights to a public trial and a jury trial in violation of the sixth amendment of the United States Constitution and section 16 of Article II of the Colorado Constitution. We hold that the Act is constitutional and thus affirm the decision of the trial courts.

## I.

### BACKGROUND OF THE ACT

In 1980, the Colorado legislature passed the Act, which was to become effective July 1, 1980. The impetus behind the legislature's action was the belief that the possession, sale, manufacture, delivery, and advertisement of drug paraphernalia encourage and glamorize the illegal use of controlled substances, as well as increase the public's acceptance of such use. The legislature felt that by regulating drug paraphernalia, it could promote the public welfare and deter the use of controlled substances. Section 12–22–501(1), 5 C.R.S. (1983 Supp.).

Five days before the Act's effective date, a complaint seeking declaratory and injunctive relief was filed in the United States District Court for the District of Colorado. The district court held that the Act was unconstitutionally vague, but on appeal the Tenth Circuit reversed. *Hejira Corporation v. MacFarlane*, 660 F.2d 1356 (10th Cir.1981). After severing the word "adapted" from the Act's definition of

"drug paraphernalia," and construing section 12–22–503 of the Act as being a part of the definition of the crime, the Tenth Circuit upheld the Act against a due process challenge.[1] In 1981, the Colorado legislature amended the Act by deleting the word "adapted" from the definition of "drug paraphernalia."

## II.

## BACKGROUND OF THE CASE

The appellants are owners of retail stores which sell records, tapes, t-shirts, and smoking accessories. In their line of accessories they sell water pipes, alligator clips, hookas, chillums, mirrors, razor blades, straws of various sizes, and different sizes of scales.[2]

In July 1981, the appellants filed complaints seeking declaratory and injunctive relief in two district courts: Adams County and Jefferson County. The Adams County District Court granted a preliminary injunction, but the Jefferson County District Court denied a preliminary injunction. Both courts refused to grant a permanent injunction.

The appellants in both cases appealed the court orders denying permanent injunctive relief. Having consolidated the cases, we now review the appellants' pre-enforcement facial challenge.

## III.

## APPROACH TO PRE–ENFORCEMENT FACIAL CHALLENGES

In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Supreme Court reviewed a drug paraphernalia licensing ordinance to determine whether or not the ordinance was unconsti-

tutionally vague or overbroad. In deciding *Flipside*, the Supreme Court established guidelines for reviewing facial pre-enforcement overbreadth and vagueness challenges:

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

*Id.* 455 U.S. at 494, 495, 102 S.Ct. at 1191 (footnotes omitted).

## IV.

## FIRST AMENDMENT ANALYSIS

In following *Flipside*, the Act must first be reviewed to determine whether it reaches a substantial amount of constitutionally protected conduct. Thus, we must determine whether the enactment infringes upon the appellants' first amendment rights, or is overbroad because it inhibits first amendment rights of others.[3] *Flipside*, 455 U.S. at 495, 102 S.Ct. at 1191.

## A. Appellants' First Amendment Rights.

 The appellants contend that section 12–22–506, 5 C.R.S. (1983 Supp.), governing the advertisement of drug parapher-

---

1. We note that the Tenth Circuit's construction of the Act is not binding on this court. *Moore v. Sims*, 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979).

2. Appellants own and operate what are commonly referred to as "head shops." "Head shop" is a slang term used to describe retail

establishments which sell items and equipment used with illegal drugs and literature pertaining to the drug culture.

3. The only constitutionally protected conduct raised by the appellants relates to first amendment speech rights.

nalia, violates their first amendment rights to free speech.[4] That section provides:

> Any person who places an advertisement in any newspaper, magazine, handbill, or other publication and who intends thereby to promote the sale in this state of equipment, products, or materials designed and intended for use as drug paraphernalia commits a class 2 misdemeanor and shall be punished as provided in section 18-1-106, C.R.S.

■ In determining the state's power to regulate speech, a distinction must be made between commercial and noncommercial speech since the "Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 562–63, 100 S.Ct. 2343, 2349–50, 65 L.Ed.2d 341 (1980). The statute prohibits "advertisement" by persons who intend to "promote the sale" of items intended for use as drug paraphernalia. Thus, the statute regulates only commercial speech: "expression related solely to the economic interests of the speaker and its audience." *Central Hudson,* 447 U.S. at 561, 100 S.Ct. at 2349.[5]

"Although speech which merely 'propose[s] a commercial transaction' is entitled to first amendment protection, the government may regulate or ban entirely commercial speech related to an illegal activity." *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1217 (11th Cir.1982) (citing *Virginia State Board of Pharmacy v. Virginia Citizens*

*Council,* 425 U.S. 748, 761, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976); *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 563–64, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980); *Pittsburgh Press Co. v. Human Relations Commission,* 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973)). *See also Flipside,* 455 U.S. at 496, 102 S.Ct. at 1192.

The appellants contend that the statute does not merely regulate commercial speech related to illegal activities but that it also regulates the advertisement of items which are "commonly regarded as drug paraphernalia" but which are not illegal "so long as there is no intent by the seller that the items be used with controlled substances." Basically, the appellants argue that if they place an advertisement in a newspaper stating they have water pipes for sale, and if they do not intend the items to be used with controlled substances, then the statute unconstitutionally prohibits their advertisement because it prohibits speech related to a legal activity, i.e., the use of a water pipe with a legal substance.

■ The appellants have misconstrued the statute. The statute only prohibits a person from placing an advertisement when that person intends to promote the sale of items designed and intended for use as drug paraphernalia. Thus, there are three elements to the crime: (1) placing an advertisement; (2) intending the advertisement to promote the sale of the advertised item; and (3) intending the advertised item to be used as drug paraphernalia. If the

---

**4.** In order for appellants to raise their first amendment rights, they must allege some threatened or actual injury resulting from the application of the law to them. *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). Threat of prosecution is sufficient injury to confer standing: "[I]t is not necessary that [the appellants'] first expose [themselves] to actual arrest or prosecution to be entitled to challenge a statute that [they] claim deters the exercise of [their] constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). *See also Johnson v. District Court,* 195 Colo. 169, 576 P.2d 167 (1978); *CF & I Steel Co. v. Colorado Air Pollution Control Commission,* 199

Colo. 270, 610 P.2d 85 (1980). The complaint alleges, and the record establishes, that the appellants have been threatened with enforcement of the statute and that such enforcement will cause them injury. Thus, they have standing to raise their first amendment rights.

**5.** The statute does not attempt to regulate noncommercial speech. "By its terms, the statute does not address advertisements glorifying the drug culture or advocating reform of the drug laws, without an invitation to purchase proscribed items." *Pennsylvania Accessories Trade Association, Inc. v. Thornburgh,* 565 F.Supp. 1568, 1574 (M.D.Penn.1983).

person placing the advertisement intends the advertised items to be used only with legal substances, as opposed to intending it to be used as drug paraphernalia, his advertisement is not prohibited by section 12–22–506, 5 C.R.S. (1983 Supp.).

**B. First Amendment Rights of Others.**

The appellants also argue that the statute is overbroad, stating: "So long as an advertiser cannot completely cut off the State of Colorado from its distribution zone, he risks criminal punishment for every printed advertisement that promotes the sale in Colorado of what Colorado determines to be 'drug paraphernalia,' notwithstanding that such items are perfectly legal in the city or state where the advertisement is placed."

■ We have already decided, in part IV A of this opinion, that the enactment only regulates commercial speech. Therefore, "it is irrelevant whether the ordinance has an overbroad scope encompassing protected commercial speech of other persons, because the overbreadth doctrine does not apply to commercial speech." *Flipside,* 455 U.S. at 496–497, 102 S.Ct. at 1192.[6] *See May v. People,* 636 P.2d 672, 675 (Colo. 1981).

■ It is clear that the statute only affects commercial speech related to illegal activities. Thus, the statute does not reach constitutionally protected conduct and the overbreadth challenge must fail.

## V.

### VAGUENESS

Having rejected the appellants' facial overbreadth challenge, we must now determine whether or not the Act is unconstitutionally vague.

■ An enactment is violative of the due process clause of the fourteenth amendment if it is so vague that its prohibitions are not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). In *Grayned* the Supreme Court enunciated the standards for determining whether an enactment is unconstitutionally vague, and discussed the rationale supporting the standards.

It is a basic principle of due process that an enactment is void for vagueness, if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Id.* at 108–09, 92 S.Ct. at 2298–99.

■ When the constitutionality of a statute is challenged, the challenging party has the burden of establishing, beyond a reasonable doubt, its unconstitutionality. *People v. Taggart,* 621 P.2d 1375, 1381 (Colo.1981). *See also Metropolitan Casualty Insurance Co. v. Brownell,* 294 U.S. 580, 584, 55 S.Ct. 538, 540, 79 L.Ed. 1070 (1934) ("[T]he burden of establishing the unconstitutionality of a statute rests on him who assails it. . . ."). In a vagueness challenge, the challenging party meets this burden by establishing that the enactment fails to provide fair notice of what conduct

---

**6.** We construe this statement in *Flipside* as a standing statement. We leave open the question whether the statute is unconstitutional as applied to an out-of-state advertiser. The appellants, however, do not have standing to raise the first amendment rights of out-of-state advertisers since only their commercial speech is being affected by the statute. *See Casbah, Inc. v. Thone,* 651 F.2d 551, 564 n. 19 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Stoianoff v. Montana,* 695 F.2d 1214 (9th Cir.1983).

is prohibited, or that the statute fails to provide law enforcement authorities with sufficiently definite standards for nonarbitrary, nondiscriminatory enforcement of the law. *See Grayned,* 408 U.S. at 108–09, 92 S.Ct. at 2298–99; *People v. Nissen,* 650 P.2d 547, 550 (Colo.1982).

■ The level of scrutiny which the court uses in reviewing a vagueness challenge will depend in part on the nature of the enactment. *Flipside,* 455 U.S. at 498, 102 S.Ct. at 1193. *Flipside* discussed four factors which affect the level of scrutiny. The strictness of the vagueness test depends upon whether the enactment: (1) is an economic regulation; (2) imposes civil or criminal penalties; (3) contains a scienter requirement; and (4) threatens to inhibit the exercise of constitutionally protected rights. *Id.* The enactment in issue, unlike the one in *Flipside,* is not an economic regulation; this factor weighs in favor of a strict level of scrutiny. The enactment imposes criminal penalties, another factor in favor of a high level of scrutiny. The remaining two factors, however, weigh in favor of a lesser level of scrutiny. The enactment contains a scienter requirement in each of the operative sections, and the Supreme Court has recognized this requirement as mitigating a claim that an enact-ment is vague. *Flipside,* 455 U.S. at 489, 102 S.Ct. at 1187. Furthermore, as we have already determined, the enactment only affects commercial speech related to illegal activities and thus does not inhibit the exercise of constitutionally protected conduct.[7]

### A. Fair Notice.

■ Since the Act does not inhibit the exercise of constitutionally protected conduct, the appellants must demonstrate that the law is impermissibly vague in all of its applications. *Flipside,* 455 U.S. at 497, 102 S.Ct. at 1192; *City of Englewood v. Hammes,* 671 P.2d 947, 951 (Colo.1983). Thus, if some of the items sold by appellants are clearly covered, their facial challenge must fail. *Flipside,* 455 U.S. at 502, 102 S.Ct. at 1195.

1. Section 12–22–502(2), 5 C.R.S. (1983 Supp.).

As discussed below, we find that due to the inclusion of the term "intended" in section 12–22–502(2), 5 C.R.S. (1983 Supp.), it is not clear whether or not the appellants are selling items covered by the statute.

■ At the heart of the appellants' vagueness argument[8] is the phrase "pri-

---

7. The Supreme Court placed great emphasis on this factor in *Flipside,* stating:

> Finally, perhaps the most important factor affecting the clarity that the Constitution demands of law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply. *Flipside,* 455 U.S. at 499, 102 S.Ct. at 1193–94 (footnote omitted).

8. Along with their challenge that section 12–22–502(2), 5 C.R.S. (1983 Supp.), is unconstitutionally vague, the appellants also challenge section 12–22–505, 5 C.R.S. (1983 Supp.), as being unconstitutional due to the lack of an *actus reus* element. Essentially, this is also a vagueness challenge; their argument is that the lack of an *actus reus* element violates their due process rights by failing to give them fair notice of what conduct is prohibited. *See People v. Marcy,* 628 P.2d 69, 73 (Colo.1981) (criminal statute must contain adequate definition of the act and mental state of each offense so that individuals have fair warning of what conduct is prohibited); *Goldman v. Knecht,* 295 F.Supp. 897 (D.Colo. 1969) (Colorado loitering statute unconstitutionally vague as not prohibiting an act, but prohibiting a condition or state, and thus failing to provide an individual with fair notice of what act is being proscribed).

The appellants' challenge to section 12–22–505, 5 C.R.S. (1983 Supp.), on the basis that it does not contain an *actus reus* element, is without merit. The section provides:

> Any person who sells or delivers, possesses with intent to sell or deliver, or manufactures with intent to sell or deliver equipment, products, or materials intending that such equipment, products, or materials will be used as drug paraphernalia commits a class 2 misdemeanor and shall be punished as provided in section 18–1–106, C.R.S.

Section 12–22–505, 5 C.R.S. (1983 Supp.).

The section does include an *actus reus* element (sale or delivery, possession with intent to sell or deliver, or manufacturing with intent to sell or deliver) and does give individuals fair warning of what conduct is prohibited.

marily designed and intended." This phrase is used in section 12–22–502(2), 5 C.R.S. (1983 Supp.), as part of the definition of "drug paraphernalia." Section 12–22–502(2) provides:

'Drug paraphernalia' means any machine, instrument, tool, equipment, or device which is primarily designed and intended for one or more of the following:

(a) To introduce into the human body any controlled substance under circumstances in violation of the laws of this state;

(b) To enhance the effect on the human body of any controlled substance under circumstances in violation of the laws of this state;

(c) To conceal any quantity of any controlled substance under circumstances in violation of the laws of this state;

(d) To test the strength, effectiveness, or purity of any controlled substance under circumstances in violation of the laws of this state.

### a. "Designed."

The appellants argue that the phrase "designed" causes problems of transferred intent: the accused's prosecution is based upon whether or not the manufacturer intended the item to be used with controlled substances. This argument was rejected in *Flipside* where the Supreme Court interpreted "designed" as referring to the objective features of an item, and held that the phrase "designed for use," as used in a drug paraphernalia ordinance, is not unconstitutionally vague. *Flipside*, 455 U.S. at 500–01, 102 S.Ct. at 1194.

### b. "Primarily."

The appellants also claim that the adverb "primarily," used in the phrase "primarily designed," is vague. We disagree. The word "primarily" does not render the statute vague, but to the contrary, it adds clarity to the statute.

▪ "Primarily" is defined as "in the first place." *Webster's New Collegiate Dictionary* 913 (1973). This demonstrates that the legislature intended the word "design" to refer to the objective features of the item as produced by the manufacturer; in essence, the features of the item as it was produced in the first place, as opposed to any modifications in the item as it was later adapted by a retailer or purchaser.[9]

### c. "Intended."

The appellants also contend that "intended" as used in the definition of drug paraphernalia is vague. We agree.

Section 12–22–502(2) does not expressly state whose "intent" is relevant. The term "intended" is used in the phrase "primarily designed and intended." As we have already stated, "designed" refers to the design of the manufacturer. Thus, it is arguable that "intended" refers to the intent of the manufacturer. However, to interpret "intended" as referring to the intent of a third person would render the section unconstitutional due to problems of transferred intent. *See Stoianoff v. Montana*, 695 F.2d 1214, 1220 (9th Cir.1983); *Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213, 1219 (11th Cir.1982); *Casbah, Inc. v. Thone*, 651 F.2d 551, 559 (8th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1367 (10th Cir.1981).

▪ If a statute is susceptible to more than one interpretation, it should be construed in a way that will render it constitutional. *United States v. Vuitch*, 402 U.S. 62, 70, 91 S.Ct. 1294, 1298, 28 L.Ed.2d 601 (1970); *Zaba v. Motor Vehicle Division, Department of Revenue*, 183 Colo. 335, 340, 516 P.2d 634, 637 (1973). Thus, "intended," as used in this section, must be construed as the intent of the person accused of violating the statute.

---

**9.** Before the 1981 amendment, section 12–22–502(2) contained the phrase "primarily adapted, designed, and intended." By deleting the word "adapted," thus rendering the phrase "primarily designed," the legislature made it clear that the objective features of the item as it was first produced, as opposed to later adapted, are in issue.

Keeping in mind the wording of section 12–22–502(2), and our construction of "intended" as used in that definitional section, we now turn to the operative sections of the statute which provide:

**12–22–504. Possession of drug paraphernalia—penalty.** (1) A person commits possession of drug paraphernalia if he possesses drug paraphernalia and *intends* to use the drug paraphernalia under circumstances in violation of the laws of this state.

(2) Any person who commits possession of drug paraphernalia commits a class 2 petty offense and, upon conviction thereof, shall be punished by a fine of not more than one hundred dollars.

**12–22–505. Manufacture, sale, or delivery of drug paraphernalia—penalty.** Any person who sells or delivers, possesses with intent to sell or deliver, or manufactures with intent to sell or deliver equipment, products, or materials *intending* that such equipment, products, or materials will be used as drug paraphernalia commits a class 2 misdemeanor and shall be punished as provided in section 18–1–106, C.R.S.

**12–22–506. Advertisement of drug paraphernalia—penalty.** Any person who places an advertisement in any newspaper, magazine, handbill, or other publication and who *intends* thereby to promote the sale in this state of equipment, products, or materials designed and *intended* for use as drug paraphernalia commits a class 2 misdemeanor and shall be punished as provided in section 18–1–106, C.R.S.

Sections 12–22–504 to 506, 5 C.R.S. (1983 Supp.) (emphasis added).

As noted, each of these operative sections contains an intent requirement. To commit the crime of possession of drug paraphernalia, a person must: (1) "possess drug paraphernalia"; and (2) "intend to use the paraphernalia under circumstances in violation of the laws of this state." To understand the first element of the crime, we must review section 12–22–502(2), the definition of drug paraphernalia. For an item to be drug paraphernalia, it must be "primarily designed [by the manufacturer] and intended [by the accused]" to be used with "any controlled substance under circumstances in violation of the laws of this state." Thus, an explication of the elements demonstrates that to commit the crime of possession of drug paraphernalia, a person must (1) possess an item "primarily designed [by the manufacturer] and intended [by the accused]" to be used with "any controlled substance under circumstances in violation of the laws of this state"; and (2) "intend to use the drug paraphernalia under circumstances in violation of the laws of this state." A similar analysis exists for the other operative sections of the Act.

 Thus, a careful reading of our statute demonstrates that the phrase "and intended," as used in the definitional section, adds nothing but confusion to the statute. Therefore, we sever from section 12–22–502(2), 5 C.R.S. (1983 Supp.), the phrase "and intended." [10]

By eliminating the phrase "and intended" from the definitional section, we do not

---

**10.** Our power to sever these words is based upon section 2–4–204, 1B C.R.S. (1973), which provides:

> **Severability of statutory provisions.** If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid, unless it appears to the court that the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court determines that the valid provisions, standing alone, are in-

complete and are incapable of being executed in accordance with the legislative intent.

The Act in question does not contain a specific severability provision, and thus the general severability provision in section 2–4–204, 1B C.R.S. (1973) is applicable. *See People v. Vinnola*, 177 Colo. 405, 494 P.2d 826 (1972). Furthermore, this general severability clause can be used not only to sever separate sections, subsections, or sentences, but may also be used to sever words and phrases. *See Shroyer v. Sokol*, 191 Colo. 32, 550 P.2d 309 (1976). Section 2–4–204, 1B C.R.S. (1973), allows severance in the present case since the void provision and the valid provision are not essentially and inseparably connected and dependent. Thus, it can be

eliminate the *mens rea* element of the crime. Our severance of "and intended" merely clarifies the statute and

> [w]ill relieve juries of the confusion that inevitably would follow an instruction that required them first to determine if an item was "drug paraphernalia" (by referring the jury to defendant's intent) and then to determine if the defendant's conduct fits within the applicable operative section (again by referring the jury to defendant's intent).

*Town Tobacconist v. Kimmelman,* 94 N.J. 85, 462 A.2d 573, 583 (1983).

The New Jersey drug paraphernalia statute also contained an "intent" element in both its definitional and operative sections. Thus, in *Town Tobacconist,* the New Jersey Supreme Court faced the same problem as we face today. It took the same approach as we have taken. Although no other jurisdiction has taken this approach, other courts have recognized the circular reasoning and confusion which occurs when "intent" is included in both the definitional and the operative sections. *See Levas & Levas v. Village of Antioch,* 684 F.2d 446, 452 (7th Cir.1982) (noting that only the definitional section of the drug paraphernalia ordinance under review included an intent requirement and thus there is no circular reiteration of the intent requirement in both the definitional and operative sections); *Casbah, Inc. v. Thone,* 651 F.2d at 559 (upholding Nebraska's drug paraphernalia statute which contained intent in both the definitional and operative sections, but noting that Indiana's drug paraphernalia statute has greater clarity because it includes intent only in the operative sections); *Record Revolution No. 6 v. City of Parma,* 492 F.Supp. 1157, 1172 n. 8 (N.D.Ohio 1980), *aff'd,* 709 F.2d 534 (6th Cir.1983) ("Because the elements of the use [of drug paraphernalia] offense are the same as a portion of the definition of drug paraphernalia, proof that an item is drug paraphernalia under the intentional use portion of the definition is proof of the offense of using drug paraphernalia with illegal drugs."). Furthermore, some courts presumed that the legislature would have enact-

have not been presented with the problem of circuitous intent because "intent" is not contained in both definitional and operative sections. *See, e.g., Nova Records, Inc. v. Sendak,* 504 F.Supp. 938 (S.D.Ind.1980), *aff'd,* 706 F.2d 782 (7th Cir.1983).

As we have construed the statute, drug paraphernalia includes items which have legal uses as well as illegal uses. However, an individual does not commit a crime merely by possessing, manufacturing, selling, delivering, or advertising drug paraphernalia. He must also intend that the item be used

> (a) To introduce into the human body any controlled substance under circumstances in violation of the laws of this state;
>
> (b) To enhance the effect on the human body of any controlled substance under circumstances in violation of the laws of this state;
>
> (c) To conceal any quantity of any controlled substance under circumstances in violation of the laws of this state; [or]
>
> (d) To test the strength, effectiveness, or purity of any controlled substance under circumstances in violation of the laws of this state.

Section 12–22–502(2)(a)–(d), 5 C.R.S. (1983 Supp.).

2. Section 12–22–502(2)(d), 5 C.R.S. (1983 Supp.).

The appellants also contend that section 12–22–502(2)(d) is unconstitutionally vague. This section provides: "(2) 'Drug paraphernalia' means any machine, instrument, tool, equipment, or device which is primarily designed and intended for one or more of the following: (d) To test the strength, effectiveness, or purity of any controlled substance under circumstances in violation of the laws of this state."

Appellants claim it is not illegal in this state to "test" a controlled substance, and thus it is unclear what activity is covered by subsection (d). Since some of the items for sale by the appellants are covered by section 12–22–502(2), 5 C.R.S. (1983 ed the valid provisions without the void one.

Supp.),[11] their vagueness challenge to that section must fail. *See Flipside*, 455 U.S. at 502, 102 S.Ct. at 1195.

## B. Enforcement Standards.

 The appellants contend the statute does not meet the second prong of the *Grayned* vagueness test: it does not provide law enforcement officials with sufficiently definite standards for nonarbitrary, nondiscriminatory enforcement of the law. We disagree. In *Flipside*, the Supreme Court stated:

> In reviewing a business regulation for facial vagueness, however, the principal inquiry is whether the law affords fair warning of what is proscribed. Moreover, this emphasis is almost inescapable in reviewing a pre-enforcement challenge to a law. Here, no evidence has been, or could be, introduced to indicate whether the ordinance has been enforced in a discriminatory manner or with the aim of inhibiting unpopular speech. The language of the ordinance is sufficiently clear that the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness.

*Flipside*, 455 U.S. at 503, 102 S.Ct. at 1195–96. While the Act does not set forth guidelines specifically directed to enforcement authorities, it does contain sufficient language to avoid arbitrary enforcement. *See* section 12–22–503, 5 C.R.S. (1983 Supp.).

## VI.

### JURY TRIAL

Appellants also contend that section 12–22–503(2) violates their right to a public trial and a jury trial. Section 12–22–503(2) provides: "In the event a case brought pursuant to this part 5 is tried before a jury, the court shall hold an evidentiary hearing on issues raised pursuant to this section. Such hearing shall be conducted in camera." Section 12–22–503(2), 5 C.R.S. (1983 Supp.).

 The appellants contend that because the judge determines *in camera*

whether or not an item is drug paraphernalia, they are denied their right to a public trial and a jury trial. This section of the Act, however, allows the trial judge to make an initial determination whether certain items are drug paraphernalia. If the court determines that an item qualifies as drug paraphernalia in the *in camera* hearing, then the jury will be presented with evidence to allow them to determine whether, as a matter of fact, the item is drug paraphernalia. Thus, the section does not deny the accused his right to a public jury trial.

We hold that the Act is constitutional. The district court orders are affirmed.

---

11. For example, the records demonstrate that the appellants had water pipes for sale which were primarily designed to introduce into the body controlled substances. These items would be drug paraphernalia under section 12–22–502(2)(a), 5 C.R.S. (1983 Supp.).